United States District Court
Southern District of Texas
**ENTERED**
August 01, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

IRVING MAGANA GARCIA,  §
  §
  **Petitioner,**  §
  §
v.  §  CIVIL ACTION NO. 7:16-CV-00632
  §
LORIE DAVIS, Director,  §
**Texas Department of Criminal Justice,**  §
**Correctional Institutions Division,**

  **Respondent.**

## REPORT & RECOMMENDATION

Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). Petitioner also filed a number of exhibits. (Dkt. No. 11). The State filed a motion for summary judgment on September 1, 2017. (Dkt. No. 19). Petitioner did not file a response to the State's motion for summary judgment.

Petitioner raises three claims in his federal habeas petition. He argues that (1) his trial attorney, Mr. Fernando Mancias, was ineffective for advising Petitioner to proceed without a qualified interpreter, and that this waiver was involuntary or unintelligent because he did not fully understand the consequences of proceeding without an interpreter; (2) his Sixth Amendment and due process rights were violated because the trial court failed to provide him with a qualified interpreter to translate the proceedings into the Spanish language; and (3) the court should not have admitted his written confession into evidence at trial because he was not properly Mirandized before giving the confession. (Dkt. No. 1 at 6-10).

Petitioner ultimately fails to show that he is entitled to federal habeas relief. More specifically, Petitioner fails to present clear and convincing evidence rebutting the state court's factual findings. Petitioner further fails to plead sufficient facts to meet the respective prejudice

standards for his claims.

This case was referred to the undersigned magistrate judge for report and recommendation. After a careful review of the record and relevant law, the undersigned has determined that all of Petitioner's claims should be dismissed. The undersigned recommends that Movant's § 2254 motion (Dkt. No. 1) be **DENIED** and the State's motion for summary judgment (Dkt. No. 19) be **GRANTED**. It is further recommended that Movant's § 2254 motion be **DISMISSED** with prejudice and the case be closed.

## BACKGROUND AND PROCEDURAL HISTORY

By indictment filed July 28, 2010, the state of Texas charged Petitioner with intentionally and knowingly causing the death of an individual, Christian De Los Santos Sanchez, in the 398th Judicial District Court, in and for Hidalgo County. (Dist. Ct. No. CR-2739-10-C, Court Filing dated July 28, 2010 (Indictment)).[1] Petitioner went to trial and was convicted of murder under the influence of sudden passion, a lesser included offense. (Dist. Ct. No. CR-2739-10-C, Court Filing dated April 18, 2011 (Disposition)). The state court sentenced Petitioner to a 20-year term of imprisonment. (*Id.*).

Petitioner filed a motion for new trial. (Dkt. No. 17-5 at 68). Petitioner subsequently filed his notice of direct appeal. (Dist. Ct. No. CR-2739-10-C, Court Filing dated June 30, 2011 (Notice of Appeal)). The Court of Appeals for the Thirteenth District of Texas abated the appeal in order to resolve the motion for new trial proceedings. (Dist. Ct. No. CR-2739-10-C, Court

---

[1] The procedural background section includes references to the state court dockets. "Dist. Ct." refers to the state district court case in the 398th District Court, in and for Hidalgo County. This docket can be found at https://pa.co.hidalgo.tx.us/Search.aspx?ID=100. "COA" refers to the appeal filed in the Thirteenth District Court of Appeals. "Tex. Crim. App." refers to cases in the Texas Court of Criminal Appeals. The COA and Texas Court of Criminal Appeals dockets can be found at http://search.txcourts.gov/CaseSearch.aspx?coa=coscca&s=c.

Filing dated October 2, 2012 (Order Abating Appeal)).   A hearing was held on the motion for new trial; the motion was denied.  (Dkt. No. 17-7 (transcript of hearing on motion for new trial)).

On March 6, 2013, the Court of Appeals for the Thirteenth District of Texas affirmed Petitioner's conviction and sentence and issued a memorandum opinion.   (Dkt. No. 16-1).[2] Petitioner filed a motion for rehearing; this motion was denied.  (COA Case No. 13-11-00547-CR, Docket Entry dated August 21, 2013).

Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals.  On April 9, 2014, the Texas Court of Criminal Appeals affirmed the judgment of the trial court.  (Dkt. No. 15-11).[3]  Petitioner filed a motion for rehearing.  The Court of Criminal Appeals denied this motion.  (Tex. Crim. App. No. PD-0646-13, Docket Entry dated June 11, 2014).  Petitioner then filed a petition for writ of certiorari with the United States Supreme Court; which was denied on November 17, 2014.  *Garcia v. Texas*, 135 S. Ct. 679 (2014) (Mem.).

Thereafter, Petitioner filed a state petition for writ of habeas corpus, docketed on August 3, 2015 in the Court of Criminal Appeals.  (Dkt. No. 16-10 at 90-105 (First State Habeas Application); Tex. Crim. App No. WR-83,681-01).  The Court of Criminal Appeals denied the petition without written order on April 6, 2016.  *Ex parte Garcia*, 486 S.W.3d 565 (Tex. Crim. App. 2016).  Petitioner filed a second state petition for writ of habeas corpus on June 6, 2016. (Dkt. No. 16-18 at 80 (Second State Habeas Application); Tex. Crim. App. No. WR-83,681-02). The Court of Criminal Appeals dismissed this petition without written order on August 10, 2016. (Tex. Crim. App. No. WR-83,681-02, Court Filing dated August 10, 2016).

---

[2] *Garcia v. State*, No. 13-11-00547-CR, 2013 WL 86541 (Tex. App.—Corpus Christi Mar. 7, 2013) (mem. op.).

[3] *Garcia v. State*, 429 S.W.3d 604 (Tex. Crim. App. 2014).

Finally, Petitioner filed the instant § 2254 petition on September 28, 2016.[4] Petitioner is projected to be released from the custody of the Texas Department of Criminal Justice on June 12, 2030.

## SUMMARY OF THE PLEADINGS

Petitioner raises three claims in his federal habeas petition. He argues that (1) his trial attorney, Mr. Mancias, was ineffective for advising him to proceed without a qualified interpreter and for failing to fully inform him of the consequences of proceeding without an interpreter such that his waiver was involuntary and unintelligent; (2) his Sixth Amendment and Due Process rights were violated because the trial court failed to provide him with a qualified interpreter to translate the proceedings into the Spanish language; and (3) the court should not have admitted his written confession into evidence at trial because he was not properly Mirandized before giving the confession. (Dkt. No. 1 at 6-10).

Respondent argues that no clearly established federal law exists because there is no Supreme Court case specific to the right to an interpreter. (Dkt. No. 19 at 24). Respondent states that a "federal court must be wary of the circumstances in which it must extend a legal rationale of the Supreme Court before it can apply [it] to the facts at hand. Such a process suggests the proposed rule is not clearly established." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In the alternative, if there is some applicable federal law, Respondent argues that Petitioner waived his right to an interpreter. (*Id.* at 26).

Respondent further argues that Petitioner's ineffective assistance of counsel and *Miranda* claims are barred for failing to raise it in his petition for discretionary review and his initial state

---

[4] "[P]ro se prisoners' filings are governed by the mailbox rule. Thus, they are deemed 'filed as soon as the pleadings have been deposited into the prison mail system.'" *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011). This date is taken from Movant's statement, made under the penalty of perjury, that his motion was placed in the prison mailbox. (Dkt. No. 1 at 13).

habeas application (*Id.* at 10, 29) (citing Dkt. No. 16-10 at 90-105 (First State Habeas Application)).  These claims were raised in his second state habeas application, but dismissed as subsequent without written opinion.  (Dkt. No. 16-18 at 80 (Second State Habeas Application); Tex. Crim. App. No. WR-83,681-02, Court Filing dated August 10, 2016).

### *Exhaustion*

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  A petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) (citations omitted).  If a petitioner fails to exhaust state remedies that are no longer available, that failure is a procedural default which bars federal habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner failed to raise his three claims in his first state habeas proceeding.  (*See* Dkt. No. 16-10 at 90-95).  His claims are procedurally defaulted.  Petitioner must present cause and prejudice for the default or show that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Petitioner broadly concludes that he satisfies these exceptions, but does not plead sufficient facts in his federal habeas petition to meet them.

Even assuming Petitioner is able demonstrate that he meets either of these exceptions, Petitioner still would not be entitled to federal habeas relief, as explained below.

### *State Courts' Factual Findings*

Before proceeding, the undersigned must briefly address the trial court's ambiguous findings and the statements made by the Thirteenth District Court of Appeals and the Court of Criminal Appeals based on these findings.  The Court of Appeals for the Thirteenth District stated that "[t]he record of the hearing on Garcia's motion for new trial established that *Garcia effectively made an express waiver of his right to a translator.*"  (Dkt. No. 16-1 at 14) (emphasis added).  The Court of Criminal Appeals concluded that "[t]he record here contains evidence that . . . *appellant and counsel communicated* their desire not to have an interpreter to the trial judge, albeit in off-the-record bench conference."  *Garcia*, 429 S.W.3d at 609; (Dkt. No. 15-11 at 9) (emphasis added).  This Court is proceeding with an understanding that the statements "Garcia [Petitioner] . . . express[ly] waive[d]" or that "appellant . . . communicated" are legal conclusions based on the principle that counsel's actions are imputed to his client, and are not factual findings that Petitioner directly spoke to or communicated with the trial judge.[5]  The acts of the agent (counsel) are imputed to his principle (client); the tendency is to speak of the counsel and client as one, under the identity of the principle.  *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' ").

---

[5] State appellate court determinations are themselves factual determinations to which the federal courts should defer if those determinations were made on the basis of a full and fair examination of the lower court record.  *E.g.*, *Parker v. Duggar*, 498 U.S. 308, 320 (1991) (the appellate court's factual determination of what the trial judge found is an issue of historical fact that is owed deference).  "Factual findings by a state appellate court are also entitled to a conclusive presumption of correctness under § 2254(d)."  *Dispensa*, 847 F.2d at 219.

In this case, the delineation between counsel and client is important. If the trial judge directly spoke to Petitioner in ascertaining the waiver, this interpretation would resolve certain ambiguities in the record *against* the Petitioner. The undersigned does not use this interpretation because there was no definitive factual finding that this occurred. No deference is owed when the court's conclusion "does not give us sufficient guidance to let us reconstruct its underlying factual bases." *Dispensa v. Lynaugh*, 847 F.2d 211, 219 (5th Cir. 1988). If the state court record is "devoid of written or even clearly inferred findings of fact" such that the federal court cannot "identify either state court's factual basis for its general and conclusory findings, there is nothing to which we can accord the statutorily mandated presumption of correctness." *Id.* When there are no written or clearly inferred factual findings, a federal court is not permitted "work backwards from [a legal] conclusion to divine the factual findings on which it is premised." *Id.*

The trial judge was informed at a bench conference that Petitioner would not need an interpreter; this much is clear. It is unclear, however, if the trial judge found that he directly spoke to Petitioner or not, and, given Petitioner's need for an interpreter, whether Petitioner was aware of what occurred at the bench conference.

After Petitioner was convicted and sentenced, new counsel, Mr. Connors, filed a motion for new trial based on the failure of the trial court to appoint an interpreter for Petitioner. The state trial court held a hearing. The record shows that Petitioner's trial counsel, the assistant state attorney, and the trial judge recalled three distinct versions of the events surrounding the interpreter issue. Petitioner's trial counsel, Mr. Mancias, testified that, although he never asked for an interpreter, he believed that he never waived Petitioner's right to an interpreter in court or spoke to the trial judge on the matter of an interpreter. (Dkt. No. 17-7 at 9-13). The Assistant State Attorney, Ms. Magdalena Hinojosa, recalled that at some point the trial court asked an

"informal question [of Mr. Mancias] . . . are you going to want an interpreter?  I don't remember whether it was on the record or not.  I thought it was.  But I know that the Judge was informed that he wasn't going to need an interpreter."  (Dkt. No. 17-7 at 18-20).  "[T]he Judge asked Fernando Mancias, are you going to want an interpreter?  And he said no."  (*Id.*).  Ms. Hinojosa testified that Petitioner was not involved in this exchange, as far as she was aware.[6]

The trial court made comments after the close of testimony recalling a version of events in which Petitioner was involved in the exchange:

> The Court: . . . I will find that Mr. Magana [Petitioner] waived the right to interpreter.  He waived it verbally.  He never objected to an interpreter not being present, and, I mean, that's what I recall of the case.  He knew about the interpreter and he didn't want an interpreter and, therefore, we didn't give him an interpreter.
>
> . . .
>
> It was a waiver.  I don't know if it's on the record.
>
> Mr. Connors:  None of us can find it on the record.
>
> The Court:  It was a waiver.  It was a waiver.  The Court finds it was a waiver.  The Court finds that the Court talked to Mr. Magana [Petitioner] and Mr. Mancias.  I want to say it was up here on the bench where we were talking and he said he didn't want one, so it's a waiver.

(Dkt. No. 17-7 at 29-30)

Atanacio "JR" Gaitan, who serves as the bailiff for the trial court, testified that he would have been able to also serve as an English-to-Spanish interpreter for Petitioner at trial but was never instructed to, and therefore he did not do so; he did act as a Spanish-to-English interpreter for some witnesses' testimony for the benefit of the jury.  (*Id.* at 22-24).  He could not recall whether anyone had talked to the judge about this matter.  (*Id.*).

---

[6] "Mr. Connors:  And once Mr. Mancias said no to the question of the Judge are you going to want an interpreter, was the Defendant talked to at all about that issue?  Ms. Hinojosa:  No, not that I know of." (Dkt. No. 17-7 at 18-20).

The trial court issued an order denying the motion for new trial. (Dkt. No. 16-20). This written order contains no factual findings on the issue of waiver. The trial court concluded that "[b]ased upon the credible testimony of Assistant Criminal District Attorney Maggie Hinojosa, lead counsel for the State in this case, and this Court's recollection of the underlying proceedings, Defendant Garcia waived his right to an interpreter during an unrecorded bench conference." (*Id.* at 3 ("Findings of Fact and Order Denying 'Motion for New Trial' ")).

The court writes that it placed its reliance on *both* its own recollection and the testimony of Ms. Hinojosa to reach its legal conclusion that Petitioner waived his right. The court's recollection differs from Ms. Hinojosa's recollection. The trial judge recalled talking to *both* "Mr. Magana [Petitioner] and Mr. Mancias" while Ms. Hinojosa recalled that the exchange was only between the trial judge and Mr. Mancias—a version of events in which there could *not* have been a waiver colloquy with Petitioner.

It is also not clear if the trial judge found that he "talked" to Petitioner directly, or whether he simply recalled Petitioner's physical presence at the bench conference. The court states that he "talked" to both "Mr. Magana [Petitioner] and Mr. Mancias. I want to say it was up here on the bench where we were talking and he said he didn't want one, so it's a waiver." The trial court concludes that someone had informed him that Petitioner would not need an interpreter. In saying that "he didn't want one," the trial court judge is not clear whether it was the attorney or Petitioner that stated an interpreter was not wanted. Whether the trial court spoke *directly* to Petitioner (using an interpreter) would ascertain whether Petitioner knew that the waiver was occurring. This factual point is uncertain.

Even if the trial judge was certain that Petitioner had been present and physically standing next to his attorney at the bench conference, this Court cannot assume that Petitioner

heard or understood that Mr. Mancias had waived Petitioner's right to an interpreter, because Petitioner did not understand English. *See Gonzalez v. United States*, 553 U.S. 242, 246-48 (2008) (the petitioner required an interpreter and the Supreme Court could only assume that he "did not hear, or did not understand, the waiver discussions"). There is no indication from the trial judge's recollection that an interpreter was called over to the bench conference; therefore, without this information, this Court cannot assume that Petitioner participated in the waiver discussion or was aware that it was happening.

Therefore, the trial judge's finding that he "talked" to "Mr. Magana [Petitioner] *and* Mr. Mancias" is understood to mean that defense counsel made the actual communication on behalf of his client who spoke no English. Without indication that an interpreter was present at the bench conference as well, Petitioner's mere physical presence at the bench conference has no significance.

## AEDPA STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to a Supreme Court decision on a question of law, or if it arrives at a different result than the Supreme Court did on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. The standard is "objectively unreasonable." *Id.* A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Further, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). There is no requirement that a state court write an opinion explaining the court's reasoning. *Id.* at 98. "For such a situation, our court: (1) assumes that the

state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

The court must construe a pro se petitioner's pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). At the same time, a petitioner must still plead sufficient facts to support his claims that extend beyond mere conclusory allegations. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

### A. *Standard*

For claims of ineffective assistance of counsel (IAC), the Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To demonstrate deficient performance a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. The Supreme Court stated that to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). The court will not second-guess strategic decisions or fault the attorney for deviations from best practices. *Premo v. Moore*, 862 U.S. 115, 121 (2011). Rather, the court looks to whether the attorney was incompetent under "prevailing professional norms." *Id.* Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The court should be highly deferential to strategic decisions. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See Maryland v. Kulbicki*, 136 S. Ct. 2, 4 (2015).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### B. *Analysis*

#### 1. *Deficient Performance*

Defense counsel's actions more than likely constituted deficient performance; however, the prejudice prong is still not met. Whether counsel was ineffective is a "mixed question of law and fact." *Strickland*, 466 U.S. at 698. "Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d) . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.*

"[O]ur conviction [is] that federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact." *Williams v. Taylor*, 529 U.S. 362, 385 (2000) (*citing Thompson v.*

*Keohane*, 516 U.S. 99, 110-111 (1995)). "In sum, the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law." *Id.*

The court is highly deferential to decisions made for strategic reasons. Often times, counsel may believe that waiving some right is worth a benefit gained in exchange. *See United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002) (*citing United States v. Olano*, 507 U.S. 725, 733 (1993)) ("[A waiver] occurs by an affirmative choice by the defendant to forego any remedy available to him, presumably for real or perceived benefits resulting from the waiver.").

Few courts, both federal and state, have issued reasoned opinions on the issue of interpreter waiver through an ineffectiveness lens. *See Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 900-01 (E.D. Mich. 2001) (finding that attorney's failure to request an interpreter constituted deficient performance and that confidence in the conviction was undermined); *Chavez-Murillo v. Wasden*, No. CV 07-468-S-MHW, 2009 WL 3063362, at *6 (D. Idaho Sept. 24, 2009) (ineffectiveness claim denied for failure to plead prejudice stemming from lack of interpreter); *Ling v. State*, 702 S.E.2d 881, 883 n.1 (Ga. 2010) (finding that trial counsel's failure to secure an interpreter was not professionally reasonable when it was based on fear that use of the interpreter might cause the jury to grow impatient and speculative fear of juror bias against non-English speakers); *In re Khan*, 363 P.3d 577, 582 (Wash. 2015) (finding decision to not request an interpreter "is not a meaningful strategy worthy of deference" but that the prejudice prong was still not met).

Defense counsel submitted an affidavit attached to the motion for new trial. This affidavit and Petitioner's affidavit were admitted as Defense Exhibit 1 at the hearing on the motion. (Dkt. No. 17-7 at 8). The following excerpt is relevant:

> I had a number of conversations with this defendant.  We always conversed in the Spanish language.  I was aware before the jury selection process in this case that this defendant could not understand, speak or write the English language.  Neither the presiding judge *nor I obtained from this defendant a knowing[], intelligent, or voluntary waiver of the services of an interpreter* so that this defendant would hear and understand all the spoken or written words used during this trial in the English language by the jury venire, serving jurors, witnesses, counsel or the presiding judge.  I knew I could obtain such an interpreter at no expense to this defendant.  I was also aware that I could employ an interpreter to sit near this defendant and provide to him simultaneous interpretation into the Spanish language of all spoken English words and translation into Spanish of all words written in the English language.
>   . . .
> Aware that the defendant only knew so few words in the English language, defense trial counsel [I] failed to ask the trial court to provide an interpreter to translate English testimony of witnesses and words of the parties' counsel into Spanish so the . . . defendant could understand all of what was being said at his trial.  The accused and I agreed not to ask for an interpreter.

(Dkt. No. 17-7 at 65 ("Affidavit") (emphasis added)).

In his affidavit, trial counsel states that he failed to obtain "from this defendant a knowing[], intelligent, or voluntary waiver of the services of an interpreter," that he "failed to ask the trial court to provide an interpreter," and that he agreed with his client to "not to ask for an interpreter."  Later testimony illuminated that trial counsel's decision to waive the right to an interpreter was based on (1) the fact that trial counsel believed an interpreter would be distracting to the jury, (2) that it would be distracting to himself, and (3) because trial counsel was bilingual, Petitioner would be able to rely on trial counsel's brief summaries of witness testimony, translated after each witness testified or during a break by trial counsel.

Mr. Mancias denied explicitly waiving the right to an interpreter, although he acknowledged that he did not ask for one.  Mr. Mancias's testimony, elicited by Petitioner's then attorney, raises some concern:

> Mr. Connors: "The accused and I agreed not to ask for an interpreter."  What else goes in—in your and his decision making to support that sentence?

Mr. Mancias: Well, I just told him I didn't want an interpreter, and he says whatever you want.

Mr. Connors: Okay.  Did you discuss with him his rights under the confrontation clause in both state and federal constitution[s] that he had a right to hear the—the Spanish language so he could understand what each of the witnesses is saying on the stand?

Mr. Mancias: I didn't—I didn't discuss it with him in those terms.  What I told— what I told him is he would have to rely on my discussing with him what the witnesses said after they finished testifying, or during a break, or something like that.

Mr. Connors:  And at the break, you didn't go over everything the witness said?

Mr. Mancias:  No, sir.

Mr. Connors:  Just one or two sentences per witness to try to explain what that witness had said during this period of time on the stand?

Mr. Mancias: I would give him as much as I could a very brief summary of what the witnesses said that was harmful to us.

Mr. Connors: That was harmful to us.

Mr. Mancias: Yes.

Mr. Connors: And if it wasn't harmful, you did not translate that?

Mr. Mancias:  Well, if it wasn't harmful in my opinion I wouldn't translate it.

. . .

Mr. Connors:  Is it—is it your analysis that Mr.—the Defendant was unable to understand the proceedings without the assistance of the Spanish to English translator?

Mr. Mancias:  Well, he would have had to rely on whatever I told him because he knows no English at all, period.

Mr. Connors: Do you know whether or not the Defendant was aware he could have gotten an interpreter from the Judge so that the client could understand the Spanish language?

Mr. Mancias:  I don't believe so, sir.

(Dkt. No. 17-7 at 7-9).

The following exchange also took place:

Mr. Mancias:  Before the trial began, I told Mr. Garcia that I didn't want an interpreter while we had the trial in front of the jury.  And my reason was very

simple.  Because I told him that, in my opinion, it would be very distracting for the jury and they may be looking over at Mr. Garcia and the interpreter as opposed to concentrating on the evidence in this case.

Mr. Connors:  And when the interpreter is talking and talking the Spanish language to the client, translating to English [sic] what's just been said, is it hard for you to concentrate on what you want to do next because you're hearing the second conversation to your left or right?

Mr. Mancias:  Well, it would have been a second or maybe on a third conversation because I was also concerned that with the interpreter there, Mr. Garcia may be asking the interpreter questions while I'm trying to listen to answers, or thinking about the following question.

Mr. Connors:  And that decreases your ability to be a good lawyer with all this conversation going on right beside you?

Mr. Mancias:  I believe so.  It's also very distracting for the jury.

(*Id.* at 6-7).

Petitioner and Mr. Mancias testified that Petitioner understood no English at the time of trial.  (Dkt. No. 17-7 at 12, 15).  The arguments made by the attorneys and the testimony of the twenty English-speaking witnesses would have been incomprehensible to Petitioner.  Defense counsel gave Petitioner "one to two sentences" or "very brief" summaries of the portion of testimony he believed was harmful to their case.  (*Id.* at 11).  Petitioner's testimony shows that he deferred entirely to his attorney's aversion to an interpreter.  The testimony also sheds doubt on whether Petitioner understood the concept of waiving his rights—Petitioner responded that he "agree[d]" to the waiver because that's what his attorney "telling [told]" him.  (Dkt. No. 17-7 at 15-16).  Petitioner stated that Mr. Mancias told him he had a "right to have an interpreter" but that "it would distract him [Mr. Mancias] and not let him concentrate very well."  (*Id.*).  He agreed to not request an interpreter because Mr. Mancias "told me [if they used an interpreter] he was not going to be able to concentrate in defending me [Petitioner]."  (*Id.*).  Mr. Mancias stated that he did not explain to Petitioner how it would affect his right to understand the State's case

and the testimony presented against him.  In his affidavit, Mr. Mancias admits to failing to obtain a knowing, voluntary, or intelligent waiver from his client.

Defense counsel's admission that he failed to obtain a valid waiver from his client could alone be enough to find deficient performance.  The defense's own case consisted of Spanish-speaking witnesses alone; Petitioner, inexperienced with the U.S. legal system, could have failed to realize that the State's case would involve many English-speaking witnesses.  Mr. Mancias, an experienced attorney, would not have suffered from this misconception.  Trial counsel believed that he should take on the burden of translating the State's witness' testimony and perform his duties as a trial attorney at the same time.  An attorney "trying to fulfill simultaneously the tasks of competent interpretation and conducting a felony trial is virtually certain to fail in one or both roles to the detriment of the client."  Virginia E. Hench, *What Kind of Hearing? Some Thoughts on Due Process for the Non-English Speaking Criminal Defendant*, 24 T. Marshall L. Rev. 251 (1999).[7]  Trial counsel, faced with this exact problem, anticipated that he would be able to

---

[7] Texas state courts have recognized this same fact in several cases.  "In this case, with the death penalty being sought, it was imperative that [defendant] understand the proceedings, and that her counsel not be diverted from the trial.  Both of [defendant]'s attorneys represented to the court that although they could communicate directly with [defendant], the interpreter was needed during the trial so that the attorneys could direct their attention to acting as an advocate for their client rather than on rephrasing the testimony from the witness stand."  *Abdygapparova v. State*, 243 S.W.3d 191, 202 (Tex. App. 2007) (ultimately affirming on direct appeal because trial court found that defendant could sufficiently understand English).  "Importantly, this was not a plea bargain or a simple trial where the use of the attorney to 'interpret' or rephrase was for a short period of time.  Instead, [defendant]'s trial was a complicated capital murder case wherein the jury was asked to assess death.  Of great concern in this case, however, is that the trial court and the State appeared to be 'more concerned about the cost of the translator than the plight of the defendant.' "  *Id.*  "In the context of a vigorously contested trial for example, an interpreter/attorney's duty to interpret may unnecessarily distract from his duty to plan and execute a trial strategy designed to provide zealous representation of the accused."  *Guerrero v. State*, 143 S.W.3d 283, 284 (Tex. App.-Waco 2004).  "Conversely, in a straightforward guilty-plea proceeding, an attorney might simultaneously serve as interpreter without much difficulty or distraction."  *Id.*

manage a few sentences of translation to Petitioner regarding the critical parts of the testimony, omitting all the rest, all after the witness finished testifying.[8]

It is difficult to see how counsel's actions hold up under objective standards of reasonableness because it is still not clear why this hardship was necessary in the first instance. The only rationale offered was that the jury might watch the interpreter talking to the client, or that Mr. Mancias himself would be distracted.  Considering that it would come at the cost of Petitioner failing to comprehend the State's case against him for homicide, the benefits obtained by this waiver are so minimal, and the fears so speculative, that it is difficult to accord this decision the normal deference and presumption of reasonableness.[9]   Both concerning and illuminating is a statement made by trial counsel to the Assistant State Attorney.  When prodded as to why he did not want an interpreter for his client, Mr. Mancias responded that he did not "really want him [Petitioner] to know what's going on."  (Dkt. No. 17-7 at 18).  This rationale for not requesting an interpreter is not a reasonable trial strategy that is entitled to deference.[10]

_____

[8] The fact that an interpreter provides "summary translation" rather than word-for-word translation is not necessarily inadequate.  "[T]he general standard for the adequate translation of trial proceedings requires continuous word for word translation of everything relating to the trial a defendant conversant in English would be privy to hear." *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990).  Under the federal Court Interpreter's Act, an interpreter need not deliver flawless, word for word translations, in that "occasional lapses" from word to word translation will not render trial "fundamentally unfair." *Id.* "The legislative history of the Court Interpreters Act contemplates that under certain circumstances even 'summary translations' allowing the interpreter to 'condense and distill the speech of the speaker' would be permissible." *Id.* at n.6.

[9] Defense counsel's concerns would have been eliminated by using a headset and microphone connected to an interpreter, a technology available in state and federal courts.  The interpreter would not necessarily have to sit at the counsel table.  This technology has been used in other state cases, although there is nothing in the record showing that it was available in this particular trial court.  *E.g.*, *Moun v. State*, No. 01-06-00790-CR, 2008 WL 339748, at *5 (Tex. App.—Houston Feb. 7, 2008) (interpreter sat with appellant and translated English testimony to Cambodian through a microphone and headset); *Ponce v. State*, No. 01-95-00367-CR, 1997 Tex. App. LEXIS 1913, at *8 (Tex. App.—Houston Apr. 10, 1997) (interpreter used earphone and microphone equipment).

[10] The due process clause prohibits trying the criminal defendant who lacks capacity to understand the proceedings, to consult with counsel, or to assist in the preparation of his defense. *Drope v. Missouri*, 420 U.S. 162 (1975).  "To be 'present' implies more than being physically present.  It assumes that a

When the reviewing federal court is "faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999). The state habeas petition was denied without written opinion. The last state court to issue a reasoned opinion regarding Petitioner's claim of ineffective assistance of counsel, the Court of Appeals for the Thirteenth District of Texas, held:

> Garcia argues that counsel's strategy "to choose to keep [Garcia] in the dark and unaware of what his accusers were testifying to in the English language against him" was not a valid, reasonable trial strategy; it was ineffective assistance of counsel. We disagree.... [E]xcept for this testimony, the record is silent regarding counsel's tactical decision, if for this reason. No one elicited specific testimony from counsel or further testimony from the prosecutor regarding this alleged motivation for counsel's strategic decision. And the trial court did not appear to consider the prosecutor's testimony in its determination of the effectiveness of counsel's assistance. Instead, the trial court based its finding that counsel's assistance was effective on counsel's credible testimony. The trial court further found that counsel "had a valid trial strategy in recommending that they not seek the appointment of an interpreter."
>
> Based on the reasoning provided by trial counsel and our deference to the trial court's right to weigh the testimony that comes before it at the hearing on the motion for new trial, we conclude that trial counsel's decision was reasonably professional and motivated by sound trial strategy. It was a decision that did not fall below an objective standard of reasonableness. Thus, Garcia failed to demonstrate, on this record, deficient performance by his trial counsel.

(Dkt. No. 16-1 at 11-12) (internal citations omitted).

After this opinion was appealed, the Court of Criminal Appeals then focused on the "off the record" aspect of the waiver. After concluding that the waiver need not be on the record to be valid, the court stated, "the record in the present case sufficiently reflects that appellant

---

defendant will be informed about the proceedings so he can assist in his own defense." *United States v. Mosquera*, 816 F. Supp. 168, 173 (E.D.N.Y. 1993) (internal quotations omitted). Like other rights, the right to be present is waivable; the court in *Mosquera*, however, aptly noted the dangers of "inadequate input from the client who has failed to understand the evidence to be relied upon by the government," and that the ability to assist counsel is still impacted when "his or her client cannot understand the charge and supporting facts. Significance of detailed factual representations may escape the lawyer, but not the client who is familiar with the circumstances surrounding his case." *Mosquera*, 816 F. Supp. at 174.

knowingly, intelligently, and voluntarily waived his right to an interpreter. The record here contains evidence that trial counsel told appellant that he had a right to an interpreter, that appellant agreed with counsel not to request an interpreter" and thus the court concluded a valid waiver took place. (Dkt. No. 15-11 at 9).

This Court defers to the state courts' determination on factual questions. Whether the exchange between defense counsel and the trial judge occurred is a factual question. Even so, the only evidence on the record that shows whether counsel obtained a knowing, voluntary, and intelligent waiver from his client before he acted, is evidence that comes from the trial counsel and from the Petitioner himself. Trial counsel admits he failed to obtain a knowing, voluntary, or intelligent waiver from his client. The lack of a colloquy in front of a judge does not make the waiver invalid; however, it does deprive us of any evidence that contradicts trial counsel's admission. *E.g., Vines v. United States*, 28 F.3d 1123, 1135 (11th Cir. 1994) ("[It is unavoidable that] [a]bsent the benefit of the trial judge's discussing with [defendant] the potential consequences of his [waiver], the judge could not have known whether his waiver . . . was knowing, intelligent and voluntary."). The record simply does not reflect any contrary evidence showing the waiver was knowing or intelligent.

Without further evidence, defense counsel's admission all but compels finding deficient performance. The Court of Criminal Appeals found that trial counsel's failure was nevertheless not deficient because it was a "strategic decision." This phrase, however often used in ineffectiveness claims, cannot simply be a meaningless rubber stamp; an action taken by a trial attorney, simply because he is a trial attorney, does not make it "trial strategy." The *strategic reasons he had for advising* his client to take this waiver are separate from determining whether

counsel was deficient for failing to *adequately advise and inform* his client.  The latter is already admitted.

There is no question that sometimes accommodating the needs of non-English speaking defendants can be burdensome.[11]  The state of Texas has and will continue to serve a large Spanish-speaking population, and many defendants will be Spanish-only speakers.  The addition of an interpreter to a trial can be cumbersome.  The solution, however, is not to waive away a Spanish-speaking defendant's ability to comprehend the proceedings and witnesses against him. This is unreasonable.

The only way to safely say defense counsel's performance would *not* be deficient is if defense counsel did not need his client's knowing, voluntary, and intelligent consent at all to waive this right.  "What suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."  *New York v. Hill,* 528 U.S. 110, 114-115 (2000) (citing *United States v. Olano,* 507 U.S. 725, 733 (1993)).   At one extreme, for "certain fundamental rights, the defendant must personally make an informed waiver."  *Id.*  At the other end, "[f]or other rights . . . waiver may be effected by action of counsel."  *Id.*  "[W]here there is a full trial there are various points in the pretrial and trial process when rights either can be

---

[11] *See Hamilton v. State,* No. 736, 2018 WL 904348, at *13 (Md. Ct. Spec. App. Feb. 14, 2018) (multiple interpreters for various family members of victim were distracting, but victim's family members have a right to attend and trial court reasonably accommodated); *Green v. State,* No. 01-98-01283-CR, 2000 WL 892859, at *1 (Tex. App. July 6, 2000) (jury found deaf complainant's testimony, as translated by a sign language interpreter, difficult to follow, warranting read-back of testimony); *see also United States v. Dempsey,* 830 F.2d 1084, 1088 (10th Cir. 1987) (calling possibility of distraction by presence of interpreter "speculative" and "minimal . . . and that distraction dissipates quickly as the novelty wears off") (internal citations omitted).

asserted or waived . . . for now it suffices to note that we have acknowledged that some rights cannot be waived by the attorney alone." *Id.* "As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* (internal quotations omitted).

There is no exhaustive list stating what rights fall into what category.   "Scheduling matters," "what arguments to pursue," "what evidentiary objections to raise," "what agreements to conclude regarding the admission of evidence," fall squarely into the category of tactical or strategic decisions made by counsel.   *Id.*   "Absent . . . ineffectiveness, counsel's word on such matters is the last."   *Id.*   If the use of an interpreter fell among these kinds of decisions, counsel would not need his client's knowing, voluntary, and intelligent consent to effectuate waiver.

This is not a right for which there are specified procedural requirements for waiver, and not likely to be one for which the law demands the defendant's "personal" participation and waiver.   *Id.* (identifying waiver of the right to counsel and a guilty plea waiver as those which require the "defendant's own informed consent" and that the judge address the defendant directly).   Justice Scalia noted that the line of cases identifying the right to counsel as a personal, fundamental right which demands a "personal[] waiver" is "essentially *sui generis,* since an unrepresented defendant cannot possibly waive his right to counsel except in person."   *Gonzalez v. United States*, 553 U.S. 242, 254 (2008) (Scalia, J., concurring).   Rejecting the "tactical-vs.-fundamental test" utilized by the majority, he noted that the test is "vague" and has "potential for uncertainty."   *Id.*   "What makes a right tactical? Depending on the circumstances, waiving *any* right can be a tactical decision.   Even pleading guilty, which waives the right to trial, is highly tactical, since it usually requires balancing the prosecutor's plea bargain against the prospect of

better and worse outcomes at trial." *Id.* In this area, Supreme Court precedent "shed[s] little light on whether and when a criminal defendant must personally waive a constitutional right." *Id.* at 566 (Thomas, J., dissenting).

The use of an interpreter most likely falls among those "basic trial choices" which "are so important that an attorney must seek the client's consent in order to waive the right," yet would not require personal participation in the waiver. *Gonzalez,* 553 U.S. at 247-48. "Concerning [exercise or waiver of basic trial rights], an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Florida v. Nixon*, 543 U.S. 175, 187 (2004). Such examples include "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Id.* An interpreter, key to the defendant's ability to understand the proceeding around him, seems appropriate for this category.

Definitively holding that the right to an interpreter falls into this category, however, would involve going beyond the needs of this case. While the application of the "tactical-vs.-fundamental test" is the appropriate test to resolve this question, the undersigned will refrain from stepping into relatively uncharted legal territory not strictly necessary to resolve this claim.[12] There is very little guidance on what makes a right a "fundamental" or not for waiver purposes.[13] While it is likely that defense counsel's failure to obtain an interpreter and failure to

---

[12] It should be noted that Texas has concluded the attorney may unilaterally waive the use of an interpreter. *Fonseca v. State*, 163 S.W.3d 98, 100-01 (Tex. App. 2005) ("[W]e do not find any reason, nor does Appellant's appellate counsel argue, that the general rule that an attorney acts on behalf of his client and the acts of the attorney are attributed to the client should be abandoned in this instance. Therefore, we conclude that Appellant's trial counsel's waiver of his request for a 'licensed' interpreter at the guilty plea hearing was effective as to Appellant."). The court found it "apparent from the record that Appellant's counsel expressly waived any request for another interpreter during his guilty plea." *Id.*

[13] "Whether a right is 'fundamental' is equally mysterious. One would think that any right guaranteed by the Constitution would be fundamental. But I doubt many think that the Sixth Amendment right to confront witnesses cannot be waived by counsel. . . . The Court concludes that the right to have an Article III judge . . . is not a fundamental right . . .without answering whether it is even a constitutional right, and

obtain his client's valid consent to waive an interpreter falls outside the range of reasonably competent professional assistance, the prejudice prong is dispositive.

### 2. *Prejudice*

To determine whether Petitioner was prejudiced by his attorney's error, the Court considers whether the error has "undermine[d] confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. This issue is not entitled to AEDPA deference because the state court did not explicitly address the prejudice prong, so there is nothing that can be deferred to. *See Wiggins v. Smith,* 539 U.S. 510, 534, (2003) ("[O]ur review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."); *Thomas v. Vannoy*, 651 F. App'x 298, 302-03 (5th Cir. 2016); *White v. Thaler*, 610 F.3d 890, 899 (5th Cir. 2010) ("[W]here the state court decided the ineffective assistance claim only by finding there was no prejudice but 'did not adjudicate [*Strickland*'s performance] prong on the merits, we review the deficient performance prong of *Strickland* de novo and the prejudice prong under the more deferential [AEDPA] standard.' "). Regardless, Petitioner cannot show prejudice under a less deferential de novo standard, either.

The State presented twenty English-speaking witnesses, mostly officers and investigators, and one Spanish-speaking witness. Unfortunately, Petitioner does not explain how the lack of an interpreter caused him prejudice by demonstrating what specifically he would have done differently had he understood the proceedings. While it is clear that he did not understand the vast majority of the State's case against him, Petitioner *must* plead specific facts showing how the trial outcome would have been different.

---

without explaining what makes a right fundamental in the first place." *Gonzalez*, 553 U.S. at 256-57 (Scalia, J., concurring).

At trial, most of the state's witnesses presented cumulative or partially cumulative testimony, detailing the sequence of events from the killing to Petitioner's arrest. Petitioner did not contest that he had killed Christian De Los Santos Sanchez; at trial, he made a self-defense argument. The defense presented witnesses testifying to Sanchez' dangerous and violent character, threats he had made against the Petitioner's life, or personal acts he had committed against them, supporting the argument that Petitioner was right to be afraid of him. The evidence showing that the killing did, in fact, occur was overwhelming. The only question at trial was whether the shooting was in self-defense or some lesser included homicide, i.e. an argument based on Petitioner's intent.

The State argued at trial that the killing was premeditated; to this effect, they presented the testimony of Ms. Rafaela Ruiz, the victim's mother-in-law. (Dkt. No. 18-2 at 104-109 (trial transcript)). Ms. Ruiz and Fredi Garcia, Petitioner's father, were cousins. (*Id.*). Ms. Ruiz testified that Fredi Garcia, reached out to her and asked to set up a meeting between Christian De Los Santos Sanchez and his son, Petitioner, so they could "clear up" things between them. (Dkt. No. 18-2 at 104-109; No. 18-3 at 11-16). Ms. Ruiz set up the meeting to occur in a shopping plaza. (Dkt. No. 18-3 at 11-16). Ms. Ruiz testified in Spanish. (Dkt. No. 18-2 at 104).

The vast majority of the English-speaking testimony involved police officers or investigators detailing the sequence of events from the killing to Petitioner's arrest, such as the technical details of recovering evidence and pursuit of the Petitioner in vehicles and on foot. (Dkt. No. 17-20 at 78-93; Dkt. No. 18-1 at 36-47). The State presented some English-language testimony that could have gone to intent: it presented medical examiner testimony that Petitioner shot the victim twelve times (Dkt. No. 18-2 at 20) and testimony Petitioner fled from the area

afterwards and threw the gun out the window (Dkt. No. 18-2 at 50-53). The main piece of evidence relied on by the state to show intent, however, was Ms. Ruiz's testimony.

The defense presented evidence that Sanchez had previously kidnapped the Petitioner's wife, daughter, and mother-in-law, for ransom; at a later time, Sanchez kidnapped Petitioner himself at gunpoint for ransom. (Dkt. No. 18-5 at 57-59, 62; Dkt. No. 18-6 at 30-44). The defense also presented witnesses who testified that Sanchez made open threats against Petitioner's life and asked family members and acquaintances to pass on the message to Petitioner. (Dkt. No. 18-5 at 63; Dkt. No. 18-6 at 5-7, 14, 16-18). The defense presented testimony that Sanchez was generally known to have a dangerous and violent character. (Dkt. No. 18-6 at 24-25). Petitioner testified that when he met up with Sanchez, he believed that Sanchez made a motion for a gun and intended to shoot him. (Dkt. No. 18-5 at 54-56). All of the defense witnesses testified in Spanish.

Petitioner does not plead any facts that specifically demonstrate how the outcome at trial would have changed. The fact that Petitioner was not able to understand the majority of the testimony presented against him is deeply concerning; however, Petitioner cannot rely on this fact alone. *Strickland* requires that he demonstrate actual prejudice. Moreover, the English-speaking testimony went to uncontested portions of the case. The critical question—whether the jury would find Petitioner had planned to kill Sanchez or if Petitioner had acted in self-defense—was determined by the testimony given by Spanish-speaking witnesses. Ms. Ruiz testified in Spanish, so Petitioner would have been able to make suggestions or give input to his attorney regarding her testimony. The self-defense argument was built entirely by witnesses who testified

in Spanish. Petitioner has not shown a reasonable probability of a different result at trial, such that confidence in the outcome has been undermined.[14]

Petitioner has failed to plead facts that demonstrate prejudice. Even reviewing this prong *de novo*, the undersigned finds no prejudice.[15] *Thomas*, 651 F. App'x at 302 n.2. Petitioner has not demonstrated that he is entitled to federal habeas relief.

For these reasons, this claim must be dismissed.

---

[14] Compare to *Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 901 (E.D. Mich. 2001) ("[N]umerous witnesses gave contradictory testimony as to whether the person who transferred the drugs was wearing light- or dark-colored clothing and whether Gonzalez was wearing light-or dark-colored clothing. While this Court recognizes there was sufficient evidence to support the conviction, there was also enough contradictory evidence to shake the Court's confidence in the outcome of the trial. Having concluded that Gonzalez required an interpreter to understand the proceedings against him and to assist in his own defense and that the evidence against Gonzalez was not overwhelming, the Court's confidence in the outcome of the trial is seriously undermined.").

[15] This Court could conclude that the state court's denial of Petitioner's claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's factual finding—that the waiver colloquy between Mr. Mancias and the trial judge occurred—was never rebutted by Petitioner. The presumption of correctness remains in place and thus Petitioner fails to show there was an unreasonable determination of the facts. Proceeding from that factual starting point, this Court applied *Strickland* and determined that Petitioner would still fail to meet the prejudice prong, rather than the deficient performance prong. This Court notes that it has resolved the claim on a different ground than the state court did, but is in agreement with the ultimate result separate from its reasoning. The Fifth Circuit has previously held that a federal habeas court's determination the state court's conclusion was not contrary to or an unreasonable application of state law depends on "the ultimate legal determination by the state court—not every link in its reasoning." *Trottie v. Stephens*, 720 F.3d 231, 240–41 (5th Cir. 2013); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) ("[W]e conclude that our focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.").
However, it is not clear that it is appropriate to agree with the state court's conclusion but not "every link in its reasoning" when there is *no* reasoning on an issue—when an unaddressed link is reviewed *de novo*. *White*, 610 F.3d at 899. The Fifth Circuit has acknowledged that "[i]t is questionable if this line of precedent [*White*] comports with our court's earlier-in-time en banc decision in *Neal v. Puckett* where we concluded that the focus of our inquiry under AEDPA 'should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence.' " Even so, under a less deferential *de novo* standard Petitioner still does not demonstrate he is entitled to relief.

## II. FAILURE TO APPOINT AN INTERPRETER CLAIM

Petitioner's argues that the lack of an interpreter at trial violated his Sixth Amendment and due process rights. "[T]he fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas." *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *see Stone v. Powell*, 428 U.S. 465 (1976); *Brecht v. Abrahamson*, 507 U.S. 619 (1993). "On the other hand, errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Taylor*, 529 U.S. at 375; *Teague v. Lane*, 489 U.S. 288, 311-314 (1989).

"[O]ur conviction [is] that federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact." *Taylor*, 529 U.S. at 385. "In sum, the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law." *Id.* The focus, in the Court of Criminal Appeals, was on the off-the-record exchange between defense counsel and the trial judge and the factual question of whether it had occurred. The Court of Appeals for the Thirteenth District of Texas determined that the trial court's duty to *sua sponte* appoint an interpreter was discharged by the waiver and the court did not abuse its discretion:

> It is apparent from the record, and undisputed on appeal, that the trial court was aware that Garcia did not understand and did not speak the English language. Thus, the trial court was required to appoint an interpreter to translate the proceedings into Spanish for Garcia, absent waiver. *See* Tex. Code Crim. Proc. Ann. Art. 38.30; *Garcia*, 149 S.W.3d at 143-45. . . . [A]lthough there was conflicting evidence, we conclude that the trial court did not abuse its discretion when it determined that Garcia waived his right to an interpreter. . . . And, in light of that waiver, the trial court did not abuse its discretion when it did not appoint an interpreter to interpret from English into Spanish.

(Dkt. No. 16-1 at 7-9).

The "starting point" determination—that the exchange between defense counsel and the trial judge occurred—is a question of fact. State court determinations of fact carry a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Petitioner must present clear-and-convincing evidence to rebut a state court's factual determinations. *Id.*

Whether a waiver was valid is a mixed question of law and fact. *See Brewer v. Williams*, 430 U.S. 387, 403 (1977). The state court applied Supreme Court standards on waiver—*Carnley v. Cochran*, 369 U.S. 506 (1962), *Johnson v. Zerbst*, 304 U.S. 458 (1938), *Boykin v. Alabama*, 395 U.S. 238 (1969), *North Carolina v. Butler*, 441 U.S. 369 (1979), and *Miranda v. Arizona*, 384 U.S. 436 (1966)—to conclude that the record facts reflected a valid waiver. The state court compared this case to one in which the trial judge explicitly referred to a certain punishment range "and the defendant did not exhibit any alarm at that time," allowing the court to rely on the defendant's "nonchalance." (Dkt. No. 15-11 at 9). Relying on a knowing, voluntary, and intelligent waiver, the state court ended the analysis there and did not reach the constitutional trial error.

As discussed in the previous section, the record points to an invalid waiver. Mr. Mancias admitted that he did not obtain a knowing, voluntary, and intelligent waiver from his client and that he did not explain to his client how waiving an interpreter would affect his right to understand the State's case and the testimony presented against him in any way. The lack of a colloquy in front of a judge does not automatically make the waiver invalid; however, it does deprive us of any evidence that contradicts defense counsel's admission that he had not obtained a valid waiver from his client.

Neither can this Court rely on Petitioner's "nonchalance" or failure to "exhibit any alarm." Petitioner neither spoke nor understood English. As discussed, it cannot be assumed

that Petitioner heard or understood that his counsel had waived his right to an interpreter at the bench conference. While this Court defers to the state court's factual determination that defense counsel informed the trial judge no interpreter would be necessary, this Court need not defer to the state court determination that the waiver was valid. Because this Court cannot safely conclude that the waiver was valid, Petitioner's claim should not be dismissed based on the issue of waiver.

Well-established principles of due process bar trying a defendant, who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense" because "though physically present in the courtroom, [he] is in reality afforded no opportunity to defend himself. . . . [This prohibition] is fundamental to an adversary system of justice." *See Drope v. Missouri*, 420 U.S. 162, 171 (1975). The right to be meaningfully present at trial is critical to due process. *Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant."). "The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge." *Ferrell v. Estelle*, 568 F.2d 1128, 1132-33 (5th Cir. 1978), *opinion withdrawn due to petitioner's death*, 573 F.2d 867 (5th Cir. 1978).

Respondent argues that this Court cannot address interpreter-related constitutional claims because there no specific Supreme Court case on the right to an interpreter. It is true that the Supreme Court has not issued an opinion regarding the role of an interpreter. Because the definition of "contrary to" requires a specific Supreme Court's decision on a point of law or decision in a case with materially indistinguishable facts, there cannot be a decision to be

"contrary to." *See Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012). This does not mean there cannot be an "unreasonable application" of the law.

*Alvarado* clarifies that "the range of reasonable judgment can depend in part on" the level generality or specificity of the relevant legal rule:

> If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Moreover, Respondent's argument is off the mark; the state courts never reached analysis of the Constitutional error, so this Court addresses the issue for the first time in this case. "Where the state courts did not reach a federal constitutional issue, 'the claim is reviewed de novo.'" *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach . . . [the] claim . . . the claim is reviewed de novo.").

Respondent is correct in stating that there is no Supreme Court case delineating a specific interpreter-related rule, but Respondent is incorrect in discerning what effect this has. It does not mean that the well-established Constitutional principles, stated above, should not apply to state courts. The effect is that there is no Supreme Court case delineating a specific procedure, inquiry, or series of factual determinations when the trial court ascertains the need for an interpreter. The Texas courts have their own state statue in this area and concluded that the informal inquiry by the trial judge was enough to discharge his duty. This Court does not address state statutory questions. The federal courts have the Court Interpreters' Act of 1978, which is inapplicable here.

The trial may be still infected by a constitutional infirmity, even if the trial judge made an otherwise sufficient attempt to ascertain that minimal Constitutional requirements were being met.  For example, in *Ferell*, both defense counsel and the trial judge made some attempt to ascertain Ferrell's understanding of the proceedings; despite the trial judge allowing trial counsel to take frequent recesses to confer with his client, defense counsel did not take advantage of these opportunities and thus reduced Farrell's rights "below the constitutional minimum." *Ferrell*, 568 F.2d at 1132-33 (regarding deaf defendant).

The trial judge may have met his duty.  The judge relied upon defense counsel's word. However, defense counsel later admitted that he had never obtained the valid waiver from his client.  It need not be the judge's error for the trial to nonetheless contain one.  This Court is still left to decide if Petitioner's rights fell below the constitutional minimum.

Respondent additionally argues that the denial of an interpreter was, at most, discretionary.  (Dkt. No. 19 at 24).  Balancing the right to an interpreter, if one is needed, against the efficient and economical administration of the law has been held to be within the discretion of the trial judge.  "The use of courtroom interpreters involves a balancing of the defendant's constitutional rights to confrontation and due process against the public's interest in the economical administration of criminal law." *United States v. Martinez*, 616 F.2d 185, 188 (5th Cir. 1980).  "That balancing is committed to the sound discretion of the trial judge . . . ." *Id.* (citing *Perovich v. United States,* 205 U.S. 86, 91 (1907)).  It was not shown, however, that the trial judge exercised his discretion or balanced any factors—the trial judge never made factual finding that an interpreter was necessary or unnecessary, and then exercised his discretion to deny an interpreter.  There was no evaluation of Petitioner's need.  *See United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980) (need for interpreter is a question of fact).  The judge's

reliance was placed explicitly on the waiver. This Court cannot work backward from the failure to appoint an interpreter to conclude that the trial court *must* have conducted a balancing of factors, when there is nothing in the record to demonstrate that such an event occurred. *See Dispensa,* 847 F.2d at 219.

Courts have recognized the procedural due process requirements of minimum competency and presence can be affected by the lack of an interpreter. "The use of courtroom interpreters involves a balancing of the *defendant's constitutional rights to confrontation and due process* against the public's interest in the economical administration of criminal law." *Martinez,* 616 F.2d 185, 188 (5th Cir. 1980) (emphasis added). The Fifth Circuit recognized that while "there is no constitutional right as such to a Court-appointed interpreter" in and of itself, the lack of an interpreter could nonetheless lead to the defendant being "inhibited from such comprehension of the proceedings or the testimony given against him in English to such an extent as to have made the trial fundamentally unfair." *Tapia,* 631 F.2d at 1210. The Fifth Circuit noted that "the basic inquiry on whether or not the failure to provide an interpreter was error *still* must be *whether such failure made the trial fundamentally unfair.*" *Id.* (emphasis added).

Various circuit courts have recognized the same. *See United States v. Joshi,* 896 F.2d 1303, 1309 (11th Cir. 1990) ("The basic constitutional inquiry remains unchanged: whether any inadequacy in the interpretation made the trial fundamentally unfair."); *United States v. Johnson,* 248 F.3d 655, 663-64 (7th Cir. 2001) (collecting circuit court cases); *United States v. Lim,* 794 F.2d 469, 470 (9th Cir. 1986) ("[S]everal circuits have held that a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter.");

*United States v. Cirrincione*, 780 F.2d 620, 634 (7th Cir. 1985) (holding that criminal proceeding can lack due process when denied an interpreter, creating four factor test); *United States ex rel. Negron v. State of N. Y.*, 434 F.2d 386, 389 (2d Cir. 1970) ("[T]he right that was denied Negron seems to us even more consequential than the right of confrontation. Considerations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice forbid . . . prosecut[ing] a defendant who is not present at his own trial . . . [and] if the right to be present is to have meaning[, require that he possess] a reasonable degree of rational understanding."); *Jackson v. Cintron Garcia*, 665 F.2d 395, 396 (1st Cir. 1981) ("That an accused is tried in a language unknown to himself does not . . . deprive him of a fair trial *provided* a suitable interpreter is afforded.") (emphasis added).

District court cases have followed. "The Court sees little difference between trying a mentally incompetent[] defendant and trying a defendant who cannot understand the proceedings against him because he does not understand the language." *See Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 903 (E.D. Mich. 2001); *Meraz v. Davis*, No. 4:15-CV-836-A, 2017 WL 2633536, at *4 (N.D. Tex. June 16, 2017) (right to be meaningfully present and minimum competency requirements applies to those who are hampered by their inability to communicate in the English language); *U.S v. Putrous*, No. CIV. 08-13047, 2010 WL 3582388, at *8 (E.D. Mich. Sept. 10, 2010) (applying *Drope* and *Pate v. Robinson*, 383 U.S. 375 (1966), to lack of interpreter); *Chavez-Murillo v. Wasden*, No. CV 07-468-S-MHW, 2009 WL 3063362, at *3 (D. Idaho Sept. 24, 2009) (acknowledging lack of interpreter is tied to Due Process); *United States v. Mosquera*, 816 F. Supp. 168, 173 (E.D.N.Y. 1993) (prohibition against trying incompetent defendants also refers to "those who are hampered by their inability to communicate" by language barriers);

*Giraldo-Rincon v. Dugger*, 707 F. Supp. 504, 507 (M.D. Fla., Feb. 24, 1989) (granting relief in §

2254 action, finding that trial without interpreter lacked fundamental fairness).

      The need for an interpreter can touch upon more than fundamental fairness, and courts

have analyzed interpreter-related issues within other constitutional frameworks, if applicable to

the facts of the case. *See, e.g.*, *Gonzalez*, 195 F. Supp. 2d at 903 (also applying a confrontation

clause analysis); *United States v. Mayans,* 17 F.3d 1174, 1179-81 (9th Cir. 1994) ("[Other cases

have] focused on the Sixth Amendment right to confront witnesses, [but here] the withdrawal of

an interpreter whose assistance has been enlisted in order that the defendant may deliver his own

testimony clearly implicates the defendant's Fifth Amendment right . . . ."); *United States v.*

*Carrion,* 488 F.2d 12, 14-15 (1st Cir. 1973) ("Clearly, the right to confront witnesses would be

meaningless if the accused could not understand their testimony, and the effectiveness of cross-

examination would be severely hampered.").  As one district court accurately summarized, "the

right to an interpreter does not appear to enjoy independent constitutional stature.  Instead, it

derives from and exists to the extent necessary to protect a criminal defendant's rights to confront

witnesses, participate meaningfully in his or her own defense, be assisted by counsel, etc."

*Rakin v. Martel*, No. 2:10-CV-0715 LKK AC, 2013 WL 1281789, at *9 (E.D. Cal. Mar. 27,

2013).  "Accordingly, a criminal defendant denied a translator can present colorable claims

under the Sixth or Fourteenth Amendments if, for example, the defendant had been unable to

communicate with his counsel or to understand the proceedings." *Id.*

      As stated, the state courts never reached analysis of Petitioner's constitutional claim, so it

is reviewed *de novo*.  Even if Petitioner's Sixth Amendment and due process rights were

violated, this alone does not automatically mandate relief.  The Supreme Court has "adopted the

general rule that a constitutional error does not automatically require reversal of a conviction . . .

and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991) (discussing cases that involve "trial error," including violation of Confrontation Clause and right to be present). The "basic inquiry is whether the failure to provide an interpreter 'made the trial fundamentally unfair.' " *Tapia*, 631 F.2d at 1210. *See Brecht*, 507 U.S. at 639-40 (Stevens, J., concurring) ("The Fourteenth Amendment prohibits the deprivation of liberty 'without due process of law'; that guarantee is the source of the federal right to challenge state criminal convictions that result from fundamentally unfair trial proceedings."). "[T]he phrase [due process] expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 24-25 (1981).

"[C]onstitutional due process violations vary dramatically in significance; harmless trial errors are at one end of a broad spectrum, and what the Court has characterized as 'structural' defects—those that make a trial fundamentally unfair even if they do not affect the outcome of the proceeding—are at 'the other end of the spectrum.' "[16] *Brecht*, 507 U.S. at 639-40 (Stevens, J., concurring). The writ of habeas corpus itself "has historically been regarded as an extraordinary remedy, 'a bulwark against convictions that violate 'fundamental fairness.' " *Id.* at 633-34 (citing *Engle v. Isaac*, 456 U.S. 107, 126 (1982)).

---

[16] Structural defects are extreme and require automatic reversal. Examples of structural defects include trying the defendant before a biased judge or a total deprivation of the right to counsel. *Arizona*, 499 U.S. at 290 (White, J., concurring). However, there is some futility in distinguishing between regular trial error and structural trial error: "These cases cannot be reconciled by labeling the former 'trial error' and the latter not, for both concern the exact same stage in the trial proceedings. Rather, these cases can be reconciled only by considering the nature of the right at issue and the effect of an error upon the trial." *Id.*

The dispositive issue is that Petitioner cannot demonstrate prejudice stemming from any Constitutional violation. The *Brecht* prejudice standard applies.[17] The *Brecht* standard is the appropriate analysis for constitutional trial errors on collateral review. *Brecht* dealt with prosecution commentary on a defendant's post-*Miranda* silence (in violation of *Doyle v. Ohio*, 426 U.S. 610, 619 (1976)), a violation of the Due Process Clause which rests on the "fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Brecht*, 507 U.S. at 628 (citing *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986)). To determine what standard should apply to such an error on collateral review, the Supreme Court drew from and repurposed the *Kotteakos* "federal harmless-error" language. *Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750, 757 (1946)).

The *Brecht-Kotteakos* standard thereafter applied to such constitutional trial errors on collateral review, rather than the *Chapman* standard on direct review. *Brecht*, 507 U.S. at 637. "The test under *Kotteakos* is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id*. This standard is "grounded in the federal harmless-error rule 28 U.S.C. § 2111" and is evaluated "in light of the record as a whole." *Id*. "To apply the *Kotteakos* standard properly, the reviewing court must, therefore, make a de novo examination of the trial record. . . . The *Kotteakos* requirement of de novo review of errors that prejudice substantial rights—as all constitutional errors surely do—is thus entirely consistent with the

---

[17] The Court did not apply the *Brecht* standard of review to the previous ineffective assistance of counsel claim because the *Strickland* standard already has a built in prejudice prong, and to apply both is considered redundant. *See Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011) (explaining *Brecht* and *Strickland*); *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000) (noting that *Brecht* harmless-error analysis is unnecessary when a habeas claim requires application of a "reasonable probability" standard, such as for *Strickland* claims).

Court's longstanding commitment to the de novo standard of review of mixed questions of law and fact in habeas corpus proceedings." *Id.* at 642.

The language from *Kottekos* itself might be more illustrative. *Kottekos* addressed whether the petitioners had "suffered substantial prejudice . . . resting its ruling on what has become known as 'the harmless error statute,'. . . ." *Kotteakos v. United States*, 328 U.S. 750, 757 (1946). The Supreme Court stated that the standard boiled down "to a very plain admonition: 'Do not be technical, where technicality does not really hurt the party whose rights in the trial and in its outcome the technicality affects.' " *Id.* at 760. " [T]he discrimination it requires is one of judgment transcending confinement by formula or precise rule." *Id.* at 761. "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." *Id.* at 764-65. The Supreme Court identified that a "constitutional norm" might be when forced confessions are admitted. In such a case, "[a]lthough on other evidence guilt might be taken to be clear," "reversals have followed." *Id.* at n.19.

The focus on the overall outcome and the effect of the error on the jury has caused several other courts to liken this standard to the *Strickland*-prejudice standard. The Third and Tenth Circuits have said the two are "essentially the same standard." *See Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011). The prejudice analysis here will be familiar.

To reiterate, Petitioner did not dispute killing the victim at trial. The English-speaking witnesses, although many in number, went to establishing the sequence of events and other undisputed facts of the case. The key question at trial—whether the jury would find Petitioner had premeditated intent to kill the victim or not—was predominantly determined by the

testimony given by Spanish-speaking witnesses. The main piece of evidence relied on by the state to show intent was Ms. Ruiz's testimony. Ms. Ruiz testified in Spanish; Petitioner would have been able to make suggestions or give input to his attorney regarding her testimony. The defense's self-defense argument was built by witnesses who testified in Spanish. Petitioner bears the burden of demonstrating what specific effect the failure to appoint an interpreter had on the outcome. Petitioner does not state how the defense would have presented differently were he able to understand the English portions of the proceeding. Consequently, he has failed to show prejudice. The constitutional error in this case did not have a substantial and injurious effect on the jury's verdict.

Consequently, this claim also must be dismissed.

### III. *MIRANDA* VIOLATION CLAIM

Petitioner's last claim is that his written confession was improperly admitted into evidence at trial because he was not properly Mirandized before giving his confession. (Dkt. No. 1 at 6-7). Petitioner states that "the confession was tainted by the earlier failure of the McAllen Police [to] provid[e] [*Miranda*] Warning[s]." (*Id*.). Petitioner states that "his written confession was made involuntary[ily] and unintelligently without given [*Miranda*] warning[s] [and] . . . without the aid of any legal counsel." (Dkt. No. 1-1 at 4-6). Petitioner also states there "was no other evidence connecting Garcia [himself] to the shooting other than his confession obtained during police interrogation after a warrantless arrest." (*Id*.). Petitioner did raise this claim in his state habeas petition. (Hidalgo County Case No. CR-2739-10-C, docket entry dated June 10, 2016). His state habeas petition was dismissed without written opinion. *Ex parte Garcia*, 486 S.W.3d 565 (Tex. Crim. App. 2016).

"Failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). While the ultimate issue of voluntariness of a defendant's

confession "is a legal question," which would require this Court's independent determination, "subsidiary factual questions, such as . . . whether in fact the police engaged in the intimidation tactics alleged by the defendant . . . are entitled to the § 2254(d) presumption." *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986). The state court's factual determinations form the "starting point" of federal habeas review. *Taylor*, 529 U.S. at 385.

Defense counsel filed a motion to suppress and a suppression hearing was had on April 4, 2011, the morning before jury selection. (Dkt. No. 17-17). Officer Jesse Saldana and Officer Francisco J. Lopez testified. Officer Saldana testified to verbally informing Petitioner of his *Miranda* Rights in the Spanish language. (*Id.* at 11-12). Officer Saldana testified that he never threatened or coerced Petitioner and that Petitioner never asked for an attorney. (*Id.* at 16, 44). Officer Saldana testified that Petitioner indicated he was willing to give a statement. (*Id.* at 14). Officer Saldana took Petitioner's statement in Spanish and translated it into written form in English; Officer Saldana read back the written form in Spanish to Petitioner, and Petitioner agreed to the statement. (*Id.* at 15-19).

Officer Lopez testified that he was present when Officer Saldana Mirandized Petitioner, and that Petitioner acknowledged the warnings that were being given to him. (*Id.* at 28-29).

Petitioner testified that he asked for an attorney, and that Officer Saldana told him he did not have the right to an attorney because he was from Mexico. (*Id.* at 33-34). He testified that Officer Saldana coerced him into signing a confession by threatening to leave Petitioner in confinement indefinitely and telling Petitioner that he would never see his children again. (*Id.* at 34-35). He testified that he would not have made the statement if he was not threatened. (*Id.* at 36). Petitioner also testified that Officer Saldana never told him he had a right to an attorney,

and that if Officer Saldana had told Petitioner he had a right to an attorney before he made his statement, Petitioner would have insisted on one. (*Id*. at 34-36).

The trial judge concluded that the statement was made voluntarily and intelligently; that there were no threats; and that Petitioner knowingly and intelligently waived his rights. (*Id*. at 49). Although the trial judge did not state that he was crediting Officer Saldana's testimony and did not make explicit factual findings that the *Miranda* warnings were given, this is an "implicit factual determination" necessary for the court's legal conclusion that Petitioner knowingly and intelligently waived his *Miranda* rights. *See Wicker*, 783 F.2d at 495 ("Implicit in the trial court's denial is a factual determination . . . . This implicit factual determination is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)." ). "[A] determination of what the trial judge found is an issue of historical fact. It depends on an examination of the transcript of the trial and sentencing hearing, and the sentencing order. . . . Because it is a factual issue, the deference we owe is that designated by 28 U.S.C. § 2254." *Parker v. Dugger*, 498 U.S. 308, 313 (1991) (reconstructing implicit factual findings in the trial judge's order which did not state explicitly what effect the judge gave Parker's non-statutory mitigating evidence).

The factual determinations of the state court carry a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Petitioner must present clear and convincing evidence to show that the factual determinations were not fairly supported by the record, in order to rebut this presumption. *Id*. In his federal habeas corpus petition, Petitioner only reasserts that he was *not* Mirandized, and concludes that the state court erred in denying the suppression motion. Petitioner does not show why the state court's determination is not fairly supported by the record. Petitioner has not met his burden. This claim must be dismissed.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, the undersigned recommends that Petitioner's § 2254 motion be **DENIED** (Civ. Dkt. No. 1) and Respondent's motion for summary judgment be **GRANTED** (Civ. Dkt. No. 19).  Finally, it is recommended that Petitioner's § 2254 motion be **DISMISSED** with prejudice, and the case be closed.

### *Certificate of Appealability*

It is recommended that the District Court deny a Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253(c)(1)(A), the movant may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." The Rules Governing Section 2254 Proceedings instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, The Rules Governing Section 2254 Proceedings.  Because it is recommended that Petitioner's § 2254 motion be dismissed, it must be addressed whether he is entitled to a certificate of appealability (COA).

A movant is entitled to a COA when it can be shown that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).  Because the undersigned finds that Petitioner fails to meet this threshold, it is recommended that the District Court deny a COA.

Accordingly, Movant is not entitled to a COA.

### *Notice to the Parties*

Within fourteen days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Federal

Rules of Civil Procedure, Rule 72(b).  Failure to file written objections within fourteen days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

The clerk of this court shall forward a copy of this document to the parties by any receipted means.

SIGNED this 31st day of July, 2018, at McAllen, Texas.

J. SCOTT HACKER
United States Magistrate Judge