UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IRVING MAGANA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-632 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court has before it Irving Magana Garcia's ("Petitioner") petition for a writ of habeas corpus,[1] and the Report and Recommendation ("R&R") of the Magistrate Judge to whom this case was referred.[2] The Court has conducted an independent review of the record and the applicable law. For the reasons below, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's R&R, **DISMISSES WITH PREJUDICE** the petition, but **GRANTS** Petitioner a certificate of appealability.

### I. BACKGROUND

As described in the R&R, in 2011 Petitioner was convicted in Texas state court of one count of murder under the influence of sudden passion.[3] Petitioner filed a motion for a new trial on the basis that the trial court failed to *sua sponte* appoint an interpreter,[4] and thereafter filed a notice of direct appeal.[5] The appeal was abated in order to resolve the motion for a new trial.[6] On November 1, 2012, an evidentiary hearing ("Evidentiary Hearing") was held on the motion and

---

[1] Dkt. No. 1.
[2] Dkt. No. 23.
[3] *Id.* at p. 2.
[4] *Id.*
[5] *Id.*
[6] *Id.* at pp. 2–3.

the motion was denied.[7] The Court of Appeals for the Thirteenth District of Texas ("Thirteenth Court of Appeals") affirmed the judgment, and the Texas Court of Criminal Appeals denied discretionary review.[8] Petitioner then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied.[9] Subsequently, Petitioner filed two state petitions for writs of habeas corpus, the first was denied and the second dismissed, both without a written order.[10]

Petitioner thereafter filed the instant federal petition for habeas corpus pursuant to 28 U.S.C. § 2254 alleging three grounds of relief.[11] Petitioner argues that (1) his trial attorney was ineffective for advising him to proceed without a qualified interpreter and for failing to fully inform him of the consequences such that his waiver was involuntary and unintelligent; (2) his Sixth Amendment and Due Process rights were violated because the trial court failed to provide him with a qualified interpreter; and (3) the Court should not have admitted his written confession into evidence because he was not properly Mirandized.[12]

After an independent review of the record and the law, the Court finds a certificate of appealability should issue as to Petitioner's claims of (1) ineffective assistance of counsel and (2) violation of his Sixth Amendment and Due Process rights.[13] The Court adopts the R&R in its entirety as to Petitioner's Miranda claim. The Court now explains its reasoning as follows.

---

[7] *Id.* at p. 3.
[8] *Id.*
[9] Dkt. No. 23 p. 3.
[10] *Id.*
[11] *Id.*
[12] *Id.* at p. 4.
[13] The Court notes the R&R found Petitioner's claims were procedurally defaulted. *See* Dkt. No. 23 p. 5. The Court declines to adopt this conclusion. Federal courts may not grant habeas relief on unexhausted and procedurally defaulted claims. 28 U.S.C. § 2254(b)(1)(A). However, procedural default is an affirmative defense that may be waived if the state fails to raise it in its responsive pleadings. *See Cupit v. Whitley*, 28 F.3d 532, 535-36 (5th Cir. 1994). Additionally, the Supreme Court has ruled, specifically in the context of Texas state habeas proceedings, that "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel . . . was ineffective,'" and if, as in Texas, the "state procedural framework . . . makes it highly unlikely in a typical case that a defendant will have a

## II.    LEGAL STANDARD

Federal habeas relief may not be granted for claims subject to 28 U.S.C. § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law that is clearly established in the holdings of the Supreme Court; that it "involved an unreasonable application of" such law;[14] or that the state court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[15]

Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the  prisoner's case."[16] When reviewing the factual findings of a state court under § 2254(d)(2), factual findings of state courts are presumed to be correct.[17] The standard used by the federal court to analyze a state court's findings of fact is one of objective reasonableness.[18] Furthermore, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard . . . whether or not the state appellate court

---

meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler,* 569 U. S. 413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). Here, the Court concludes that Petitioner's Sixth Amendment and ineffective assistance of counsel claims may not be procedurally defaulted. In regards to Petitioner's Sixth Amendment and Due Process claim, Respondent failed to raise procedural default. *See* Dkt. No. 19 pp. 13–29 (addressing the merits of Petitioner's claim and making no mention of default). Thus, Respondent likely waived any procedural default defense as to Petitioner's claim of violations of his Sixth Amendment and Due Process rights. In regards to Petitioner's ineffective assistance of counsel claim, although Respondent raised default in its response, Petitioner was proceeding *pro se* when he filed his first state habeas petition, *see* Dkt. 16-10 pp. 90-95, and thus the *Trevino* exception likely applies. Accordingly, the Court does not now make a determination on the issue of procedural default as to either claim, but declines to adopt the Magistrate Judge's conclusion that Petitioner's claims were procedurally defaulted. Thus, the Court will consider both claims on the merits.
[14] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000).
[15] 28 U.S.C. § 2254(d)(2).
[16] *Williams*, 529 U.S. at 413.
[17] 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").
[18] *Williams*, 529 U.S. at 412; *see also Montoya v. Johnson,* 226 F.3d 399, 404 n.11 (5th Cir. 2000).

recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard."[19]

Pursuant to 28 U.S.C. § 2253(c)(1)(A), a petitioner may appeal the final order of habeas corpus if "the circuit justice or judge issues a certificate of appealability." A petitioner is entitled to a certificate of appealability when it can be shown that a reasonable jurist would find the "assessment of the constitutional claims debatable or wrong."[20] The petitioner need not show he should prevail on the merits, but must present a "question of some substance" or a "substantial showing of the denial of [a] federal right."[21] Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"[22]

Granting a certificate of appealability "does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence."[23] A court "should limit its examination [at the certificate of appealability stage] to a threshold inquiry into the underlying merit of [the] claims," and ask only if the court's "decision was debatable."[24] "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail."[25]

## III.  ANALYSIS

Upon review, the Court concludes that Petitioner's claims present constitutional issues that merit granting a certificate of appealability. Specifically, the Court determines that reasonable jurists could debate whether the failure to provide Petitioner with an interpreter

---

[19] *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) and *Chapman v. California*, 386 U.S. 18, 18 (1967)).
[20] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).
[21] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotations omitted).
[22] *Id.*
[23] *Miller-El v. Cockrell*, 537 U.S. 322, 341–42 (2003).
[24] *Id.* at 327, 348.
[25] *Id.* at 338.

without a valid waiver constituted a structural error that "affect[ed] the framework within which the trial proceeds"[26] and therefore Petitioner need not demonstrate prejudice in order for his petition to be granted.

This question is raised by both Petitioner's claims. The constitutional and factual issues in the two claims are closely related. To wit, as the Court will explain more thoroughly, the Court concludes that the trial strategy of Petitioner's counsel to waive the services of an interpreter without obtaining a valid waiver from Petitioner caused violations of Petitioner's Sixth Amendment and Due Process rights. The trial court compounded that error by failing to ensure Petitioner's rights were protected. Thus, the instant petition presents two intertwined errors: (1) the errors of counsel that constitute ineffective assistance of counsel, and (2) the violations of Petitioner's substantive rights flowing from trial counsel's deficient performance that were not corrected by the trial court.

Because of the two claims interconnected nature the Court will lay out the issues together. The instant petition presents constitutional issues in two areas. First, the state courts determined that Petitioner made a valid waiver on the record. However, upon independent review of the state court record, this Court concludes that such a determination was unreasonable in light of the evidence.[27] Second, after a *de novo* review,[28] the Court concludes that, in the absence of a valid waiver, the denial of an interpreter established constitutional harms as to both claims. Further, for the reasons laid out in this Opinion, the Court determines that reasonable jurists could conclude these harms constitute structural error. Thus, the petition may succeed without a demonstration of prejudice.

---

[26] *Arizona v. Fulminante*, 499 U. S. 279, 310 (1991).
[27] *See* 28 U.S.C. § 2254(d)(2).
[28] *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (determining that when a state court does reach prejudice the reviewing court considers the claim *de novo*).

The Court will first present the findings of fact of the trial court that Petitioner had provided a valid waiver on the record and the legal determinations of the Texas appellate courts based on those facts. The Court will then turn to the question of structural error.

## A.     Factual Findings Regarding Waiver

The issue here turns on whether it was unreasonable for the Thirteenth Court of Appeals and the Texas Court of Criminal Appeals to determine that Petitioner provided a valid waiver of Petitioner's right to an interpreter based on the factual record in the state court proceedings.[29]

The trial record is silent as to any such communication. To be clear, pretrial and during trial, there is absolutely no evidence in the record of the trial court itself of such a waiver. After the trial concluded, the trial judge made a factual finding—based on evidence presented at the Evidentiary Hearing—that Petitioner, or perhaps Petitioner's counsel on Petitioner's behalf,[30] knowingly and intelligently waived the services of an interpreter during an unrecorded bench conference.[31] The trial judge relied, in part, on the trial judge's own recollection of the trial to make the finding.[32]

However, the testimony at the Evidentiary Hearing is ambiguous about this bench conference. As the Magistrate Judge concludes, "[t]he record shows that Petitioner's trial counsel, the assistant district attorney, and the trial judge recalled three distinct versions of the events surrounding the interpreter issue."[33] The Magistrate Judge, giving deference to the trial judge's finding, analyzed Petitioner's claim with the understanding that the bench conference occurred, but that "defense counsel made the actual communication on behalf of his client who

---

[29] *See* Dkt. No. 16-1 (order of the Thirteenth Court of Appeals), *Garcia v. State*, 429 S.W.3d 604 (Tex. Crim. App. 2014) (order of the Texas Court of Criminal Appeals).
[30] As noted in the R&R, and discussed later in this Opinion, it is unclear whether the trial judge was indicating that Petitioner or Petitioner's counsel provided a waiver. *See* Dkt. No. 23 p. 7.
[31] Dkt. No. 16-20 p. 3.
[32] *Id.*
[33] Dkt. No. 23 p. 7.

spoke no English."[34] The Magistrate Judge further determined that defense counsel waived the right to an interpreter in front of the trial judge, but failed to "adequately advise and inform" Petitioner of his right to an interpreter.[35] The Court agrees with the R&R's ultimate conclusion that no valid waiver was obtained, but declines to adopt the R&R's analysis of the factual record.

Specifically, the Court determines, even giving all due deference to the findings of fact of the trial court,[36] it is not clear the record supports a finding that *any* bench conversation regarding the waiver of an interpreter occurred. Further, even assuming the record provides sufficient evidence to find such a bench conference happened, the Court concludes that the state courts' determinations that Petitioner validly waived an interpreter were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings."[37] To explain this Court's differing analysis, the Court now details the record of both the trial and the subsequent Evidentiary Hearing.

### i.     Summary of the Trial and Evidentiary Hearing

The following facts are not disputed and are supported by the trial record itself: (1) all the attorneys and the trial judge knew Petitioner could speak and understand only Spanish; (2) Petitioner was not provided a translator during the trial even though one was available; (3) a Spanish-to-English interpreter was provided for the benefit of the jury for witnesses who spoke Spanish, but no interpreter was provided for witnesses who spoke English for the benefit of Petitioner; and (4) there is no evidence in the trial record that Petitioner waived his right to an interpreter.[38]

---

[34] *Id.* at p. 10.
[35] *Id.* at p. 22.
[36] *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct.").
[37] *Id.* § 2254(d)(2).
[38] *See* Dkt. No. 23.

Petitioner filed a motion for a new trial to resolve whether the trial court failed, *sua sponte,* to appoint an interpreter after learning that Petitioner did not speak or understand English.[39] Because the trial record contained no evidence upon which to resolve this, the Evidentiary Hearing was held almost two years after the trial concluded. The following individuals testified: Petitioner; Petitioner's trial attorney, Mr. Mancias ("Mancias"); the state prosecutor, Ms. Hinojosa ("Hinojosa"); and the bailiff, Mr. Gaitan ("Gaitan").[40] The testimonies provided varying accounts of what conversations occurred during the trial regarding an interpreter.

Mancias testified at the Evidentiary Hearing that he advised Petitioner before the trial began that it was best to proceed without an interpreter and Petitioner raised no objection.[41] Mancias characterized the conversation as follows: "I [Mancias] just told [Petitioner] that I [Mancias] didn't want an interpreter and [Petitioner] says whatever you want."[42] In an affidavit submitted before the Evidentiary Hearing, Mancias admitted he did not "obtain from [Petitioner] a knowing[], intelligent, or voluntary waiver of the services of an interpreter,"[43] and in his testimony at the Hearing, Mancias acknowledged he did not discuss with Petitioner "[Petitioner's] rights under the confrontation clause of both state and federal constitutions."[44] Mancias further conceded that he did not believe "[Petitioner] was aware he could have gotten an interpreter from the Judge . . . ."[45] Mancias also testified he did not believe there was a hearing in front of the trial judge where Petitioner "waived his right to have an interpreter."[46] Finally,

---

[39] Dkt. No. 17-5 p. 69.
[40] Dkt. No. 17-7 p. 3.
[41] *Id.* at pp. 9–10.
[42] *Id.* at p. 10.
[43] *Id.* at p. 65.
[44] *Id.* at p. 16.
[45] *Id.* at p. 12.
[46] Dkt. No. 17-7 pp. 12–13.

Mancias testified that during the trial he acted as an interpreter for Petitioner but only provided "a very brief summary of what the witnesses said that was harmful."[47]

Petitioner's testimony mirrors that of Mancias and indicates that Mancias raised the issue of an interpreter, but did not recommend it. Petitioner's testimony states:

> Q: [C]an you tell the Judge what [Mancias] told you about we're not going have an interpreter here during the trial?
>
> [Petitioner]: [Mancias] told me that I had the right to have an interpreter, but that . . . he wouldn't recommend that because . . . that would distract him and not let him concentrate very well . . . .
>
> Q: Do you agree with [Mancias'] recommendation not to request an interpreter?
>
> [Petitioner]: Well, yes, that's what [Mancias] was telling me.
>
> Q: Did you agree . . . not to request an interpreter and you did not want one present?
>
> [Petitioner]: Yes, because [Mancias] told me that he was not going to be able to concentrate in defending me.[48]

Significantly, Petitioner makes no mention of any bench hearing before the trial judge.[49]

The lead prosecutor, Hinojosa, provided a slightly different version of events. Hinojosa testified she spoke with Mancias about the need for an interpreter.[50] She also testified that some kind of conversation about the necessity of an interpreter *did* occur in front of the trial judge, but that Petitioner was not present. On that point, Hinojosa testified, in relevant part, as follows:

> Q: [D]id you inform the Court [Petitioner] didn't want an interpreter?
>
> [Hinojosa]: I believe that at one point the Court was informed of it and I think it was an informal question by the Judge, are you going to want an interpreter? I don't remember whether it was on the record or not. I thought it was. But I know the Judge was informed that he wasn't going to need an interpreter . . . I can't tell you verbatim what the words were . . . .

---

[47] *Id.* at p. 11.
[48] *Id.* at pp. 15–16.
[49] *Id.*
[50] *Id.*

Q: [I]n the presence of the Judge what was said?

[Hinojosa]: In the presence of the Judge . . . the Judge asked [Mancias], are you going to want an interpreter and he said no . . . .

Q: And once [Mancias] said no . . . was [Petitioner] to talked to at all about that issue.

Hinojosa: No, not that I know of.[51]

Significantly, Hinojosa's testimony makes no mention of any communication between Petitioner and the trial judge during which Petitioner was informed of his right to an interpreter.[52]

Gaitan, the bailiff, testified that a conversation occurred between Mancias and Hinojosa about an interpreter, but did not recall any conversation that involved the trial judge. Gaitan testified he "heard a conversation between [Mancias] and [Hinojosa] discussing about if [Mancias] was requesting an interpreter."[53] Regarding the trial judge, Gaitan testified:

Q: And do you know if at any time the Judge was made aware that [Mancias] was not requesting an interpreter?

[Gaitan]: I do not remember. I don't recall if I went back and told the Judge that . . . [Mancias] was not requesting a court interpreter.[54]

Again, Gaitan's testimony provides no basis upon which to find that any conversation occurred at the bench in front of the trial judge.

However, at the conclusion of the testimony at the Evidentiary Hearing, the trial judge found that Petitioner waived his right to an interpreter at the bench. Specifically, the trial judge made the following statement, speaking as the Court:

The Court: I will find that [Petitioner] waived the right to interpreter. He waived it verbally. He never objected to an interpreter not being present, and I mean, that's what I recall of the case . . . It was a waiver. I don't know if it's on the record.

---

[51] *Id.* at pp. 18–20.
[52] Dkt. No. 17-7 pp.18–20.
[53] *Id* at p. 23.
[54] *Id.*

Mr. Connors[55]: None of us can find it on the record.

The Court: It was a waiver. It was a waiver. The Court finds it was a waiver. The Court finds that the Court talked to [Petitioner] and [Mancias]. I want to say it was up here on the bench where we were talking and he said he didn't want one, so it's a waiver.[56]

In the written order resolving the motion for a new trial, the trial judge made the following findings of fact:

2. Based upon the credible testimony of [Mancias], and [Petitioner], [Petitioner] was aware of his right to an interpreter and for valid reasons, pertaining to trial strategy, did not request an interpreter.

3. Based upon the credible testimony of [Hinojosa] . . . and *this Court's recollection of the underlying proceedings*, [Petitioner] waived his right to an interpreter during an unrecorded bench conference.[57]

The Court notes that the trial judge's recollection is only supported in the record by the trial judge's oral statement entered during the Evidentiary Hearing. The trial judge did not otherwise testify at the Evidentiary Hearing and was not subject to cross examination by Petitioner's counsel. The Court now turns to the Thirteenth Court of Appeals and the Texas Criminal Court of Appeals' review of the record.

ii.      *Legal Determinations of the State Courts*

When the reviewing federal court is "faced with a silent or ambiguous state habeas decision the federal court should 'look through' to the last clear state decision on the matter."[58] The last state courts to review Petitioner's constitutional violation with written orders were the

---

[55] Mr. Connors acted as Petitioner's counsel at the Evidentiary Hearing. *See id.*
[56] *Id.* at pp. 29–30. (Although not specified, this finding can only be a legal conclusion as there was no evidence from which the trial court could make a factual determination that a bench conference had occurred until the court stated as such).
[57] Dkt. No. 16-20 p. 3 (emphasis added).
[58] *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999).

Thirteenth Court of Appeals and the Texas Court of Criminal Appeals.[59] The courts addressed

different elements of Petitioner's claim; thus, the Court now considers both.

The Thirteenth Court of Appeals reviewed the evidence from the Evidentiary Hearing

and determined:

> There is evidence [Petitioner] and [Mancias] agreed not to request an interpreter
> as part of their trial strategy. There is also evidence that [Mancias] informed the
> trial court and [Hinojosa] that [Petitioner] did not want an interpreter . . . although
> there is conflicting testimony, the trial court could have determined that
> [Petitioner] voluntarily and knowingly waived the appointment of his interpreter
> because [Petitioner] knew he had a right to an interpreter, understood [Mancias']
> reason for waiving that right and agreed with [Mancias]. Moreover, the trial court
> recollected that [Petitioner] waived his right to an interpreter during an
> unrecorded bench conference."[60]

On this basis the Thirteenth Court of Appeals concluded, "the record of the hearing on

[Petitioner's] motion for new trial established that [Petitioner] effectively made an *express*

*waiver* of his right to a translator."[61] Although the meaning of an 'effective express waiver' is

somewhat unclear, the Fifth Circuit has previously noted that an express waiver is one in which

an individual "manifested a clear and unambiguous intent to waive."[62]

Petitioner then requested discretionary review of the Thirteenth Court of Appeals' order.

The Texas Court of Criminal Appeals denied Petitioner's request concluding "the record in the

present case sufficiently reflects that [Petitioner] knowingly, intelligently, and voluntarily waived

his right to an interpreter."[63] The Texas Court of Criminal Appeals further found that the record

contained "evidence that trial counsel told [Petitioner] that he had a right to an interpreter, that

[Petitioner] agreed with [Mancias] not to request an interpreter, and that [*Petitioner] and*

---

[59] Petitioner also filed two state habeas petitions, but these were denied without a written order. *See* Dkt. No. 23 p. 3.
[60] Dkt. No. 16-1 pp. 8–9.
[61] *Id.* (emphasis added).
[62] *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010) (quotations omitted) (analyzing 28 U.S.C. § 2254(b)(3)).
[63] *Garcia*, 429 S.W.3d at 609.

[*Mancias*] communicated *their* desire not to have an interpreter to the trial judge, *albeit in an off-the-record bench conference*."[64]

The Magistrate Judge determined these were "legal conclusions . . . and are not factual findings that Petitioner directly spoke to or communicated with the trial judge."[65] This Court agrees. However, giving all due deference, the Court is unconvinced that the factual record contains sufficient evidence for the Thirteenth Court of Appeals and the Texas Court of Criminal Appeals to have permissibly reached these legal determinations.

The Supreme Court of the United States has held that "[p]resuming waiver from a silent record is impermissible."[66] In order to find waiver, the record "must show, or there must be an allegation and evidence" for a court to find that an accused "intelligently and understandingly" rejected a constitutional right.[67] Further, "presuming waiver of a fundamental right from inaction is inconsistent with this Court's pronouncements on waiver of constitutional rights."[68] The Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege."[69] Texas courts have determined that a waiver of an interpreter must be given "plainly, freely, intelligently."[70]

The Texas Court of Criminal Appeals analyzed these constitutional requirements of waiver and found the following:

> The Supreme Court was not content to simply say that the 'record' must show a waiver. It added an alternative way of showing the waiver through 'an allegation and evidence.' The 'allegation and evidence' phrase indicates that an appellate court can determine that a valid waiver has occurred even if the record fails to

---

[64] *Id.* (emphasis added).
[65] Dkt No. 23 p. 6.
[66] *Carnley v. Cochran*, 369 U.S. 506, 516 (1962).
[67] *Id.*
[68] *Barker v. Wingo*, 407 U.S. 514, 525 (1972).
[69] *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).
[70] *Garcia*, 429 S.W.3d at 608 (quoting *Marin v. State,* 851 S.W.2d 275, 280 (Tex. Crim. App. 1993)).

contain a waiver colloquy—so long as there is other evidence that a valid waiver actually occurred.[71]

Thus, a valid waiver that occurred off-the-record may be sufficient to find that a defendant has waived a constitutional right, but this determination cannot be made without *any evidence* in the record supporting that such an off-the-record waiver actually occurred.

### iii.    Analysis of the Factual Record

The Court now considers whether the record supports finding Petitioner "freely, plainly, and intelligently" waived his right to an interpreter. The Court determines the legal determinations of the state courts were unreasonable in light of the evidence presented in the state court proceedings.

First, the recollection of the trial judge is ambiguous at best, and relying on it calls into question issues of fundamental fairness. Second, regardless of whether the trial judge's recollection is the basis of waiver, the Court doubts whether the record supports finding Petitioner provided a voluntary and knowing waiver. The Court will consider each in turn.

### a.    Trial Judge's Recollection

The finding of fact from the written order after the Evidentiary Hearing is ambiguous and could be interpreted in multiple ways. Specifically, the written order states:

> Based upon the credible testimony of [Hinojosa] . . . and this Court's recollection of the underlying proceedings, [Petitioner] waived his right to an interpreter during an unrecorded bench conference.[72]

From this it is unclear what occurred at the bench conference. The finding of fact could indicate: (1) the trial judge spoke directly to Petitioner through an interpreter; (2) Petitioner was present at the bench conference but there was no interpreter; or (3) Petitioner was not present at all and Mancias waived the services of an interpreter on Petitioner's behalf.

---

[71] *Id.* at 608.
[72] *Id.*

Reviewing the evidence listed in support—the testimony of Hinojosa and the trial judge's recollection—provides no certainty as to the intended meaning of the factual finding. The trial judge's recollection, as entered into the record of the Evidentiary Hearing states, in relevant part:

> The Court finds that the Court talked to *[Petitioner] and [Mancias]*. I want to say it was up here on the bench where we were talking and *he* said *he* didn't want one, so it's a waiver.[73]

This indicates that the bench conference involved Petitioner and Mancias, but the 'he' in the statement is not clear. It could refer to Mancias or Petitioner. Hinojosa testified that she did not believe Petitioner participated in the bench conference.[74] Indeed, to her knowledge Petitioner was not "talked to at all about that issue."[75] The additional testimonial evidence from the Evidentiary Hearing either does not corroborate that Petitioner was involved in the bench conference or directly refutes that Petitioner was involved in any conversation with the trial judge. Thus, the most reasonable interpretation of the trial judge's factual finding is that Mancias waived Petitioner's right to an interpreter without Petitioner being present.

However, neither of the Texas appellate courts' legal determinations of waiver were based on a factual finding that Mancias waived the services of an interpreter on Petitioner's behalf. Both found that Petitioner waived his rights on the record, and both based their finding of waiver on the fact that *Petitioner* was involved in the waiver discussion at the bench conference. The Thirteenth Court of Appeals determined the record of the Evidentiary Hearing showed Petitioner gave an "express waiver."[76] Absent a colloquy that involved Petitioner at the bench, there is little in the Evidentiary Hearing record to support that Petitioner clearly and

---

[73] Dkt. No. 17-7 p 30 (emphasis added).
[74] *See id.* at p. 20.
[75] *Id.*
[76] Dkt. No. 16-1 p. 9.

unambiguously manifested his intent to waive an interpreter.[77] The Texas Court of Criminal Appeals explicitly found Mancias *and Petitioner* "communicated *their* desire not to have an interpreter to the trial judge."[78] Thus, both Texas appellate courts based their determination of waiver primarily on an unrecorded bench conference that involved Petitioner. Neither considered or analyzed a factual scenario in which Mancias waived an interpreter without Petitioner's presence.

However, the only evidence in the record that supports finding Petitioner participated in the bench conference is the trial judge's recollection. Even this evidence is extremely weak. The trial judge's recollection could support any one of three possibilities, and the two possibilities that involved Petitioner at the bench were directly refuted by other testimony at the Evidentiary Hearing. Thus, the Texas appellate courts based their determinations of waiver on evidence that is, at best, ambiguously supported by the record, and at worst, entirely missing from the record. This leaves the Court with significant doubt whether the state courts' finding of a valid waiver were based on a reasonable "determination of the facts in light of the evidence presented in the State court proceeding."[79]

Additionally, regardless of the ambiguity, the Court is troubled by the reliance of the Texas appellate courts on the recollection of the trial judge. It is a long recognized legal principle that a judge cannot serve as a material witness as well as the trier of fact.[80] If a judge is testifying or otherwise adding evidence from his own memory to the record, principles of due process and

---

[77] The only additional evidence in the Evidentiary Hearing upon which the Thirteenth Court of Appeals could be basing a finding of an "express waiver" would be the conversation between Mancias and Petitioner. Mancias reported that Petitioner did not object to waiving an interpreter and stated, "whatever you want." *See* Dkt. No. 17-7 p. 10. Such a conversation would hardly constitute an express waiver. *See Woodfox*, 609 F.3d at 792.

[78] *Garcia*, 429 S.W.3d at 609 (emphasis added).

[79] *See* 28 U.S.C. § 2254(d)(2).

[80] *United States v. Halley*, 240 F.2d 418, 419 (2d Cir. 1957) ("where the judge may be a material witness he himself should not hear the case but ought to disqualify."); *Terrell v. United States,* 6 F.2d 498, 499 (4th Cir. 1925) ("a judge presiding at a trial is not a competent witness, for the duties of a judge and a witness are incompatible."); *Cf. Hale v. Wyatt,* 78 N.H. 214, 98 A. 379 (1916).

fairness still apply.[81] The right to be informed of adverse evidence to be weighed by the trier of fact and to subject that evidence to cross-examination is basic to due process in all types of proceedings, whether they be judicial or quasi-judicial hearings.[82] In the context of contempt proceedings, the Supreme Court has noted that a trial judge overseeing proceedings and relying on his "own personal knowledge" as evidence violated principles of fairness and due process because the accuracy of the judge's knowledge "could not be tested by adequate cross-examination."[83] Ensuring that the recollection of a trial judge is subject to cross-examination is particularly relevant when a judge is providing a recollection that serves to rebut testimonial evidence or could impugn the judge's credibility.[84]

In *Tyler v. Swenson* the Eighth Circuit considered a habeas petition that raised similar issues as those raised in the instant petition.[85] In that case, a post-conviction evidentiary hearing was held to determine events that occurred in the trial judge's chambers prior to the petitioner's guilty plea.[86] At the evidentiary hearing conflicting testimony was given regarding whether the trial judge had threatened the petitioner with a longer sentence if the petitioner went to trial instead of pleading guilty.[87] The trial judge relied on his own memory to refute the testimony of witnesses and issued a ruling making a finding of fact that he had made no such threat.[88] The Eighth Circuit found the evidentiary hearing was not a fair hearing, noting:

> We think it runs against the grain of fairness to say that the same judge may consider his own crucial testimony and recollection rebutting petitioner's claim and simultaneously pass upon the credibility of all witnesses in weighing the

---

[81] *See e.g., Tyler v. Swenson,* 427 F.2d 412, 416 (8th Cir. 1970); *In re Murchison*, 349 U.S. 133, 138 (1955).
[82] *See e.g., Gonzales v. United States*, 348 U.S. 407 (1955); *Simmons v. United States*, 348 U.S. 397 (1955); *United States v. Nugent*, 346 U.S. 1 (1953).
[83] *In re Murchison*, 349 U.S. at 138 (1955).
[84] *See State v. Stewart*, 282 S.W.3d 729 (Tex. App. 2009) (finding no error in an appellate court relying on a trial judge's recollection because the judge's recollection did not "rebut any evidence adduced at the hearing.").
[85] 427 F.2d 412 (8th Cir. 1970).
[86] *Id.* at 413.
[87] *Id.* at 413–414.
[88] *Id.* at 414.

evidence. A member of the judiciary has no particular competence in factual recollection of unrecorded events. In fact, the many cases a trial judge participates in may well cloud vivid recollection of detail in a specific case. A party should be permitted to test a judge's recollection, as a witness presenting factual material testimony, as he would any other witness upon cross-examination.[89]

The *Tyler* court held that an evidentiary hearing cannot be considered fair when a trial judge "offers disputed and material testimony which is challenged by the petitioner" and "the trial judge's recollection was the *only* testimony which refuted petitioner's claim, a claim which challenged the propriety of the judge's prior conduct."[90]

This Court finds the issues of fundamental fairness identified in *Tyler* are at play here. The trial judge's recollection that Petitioner waived an interpreter at an unrecorded bench conference is in direct conflict with the testimony of Mancias, Petitioner, and Hinojosa. Yet, the trial judge's recollection was not subjected to cross-examination or other opportunity for Petitioner to rebut this evidence. Furthermore, the trial judge's recollection was not an immaterial supplement to the record, but as noted, a key factual finding relied on by the Texas appellate courts.

It is a violation of concepts of fairness and due process to allow a trial judge's recollection to be the basis for determining a material and disputed fact, without providing Petitioner the opportunity to "adequately test" such evidence.[91] The Evidentiary Hearing was held nearly two years after the trial occurred. The trial judge's memory of the events would have undoubtedly faded. But, here, the trial judge's recollection was not subject to cross-examination or rebuttal. Additionally, although no one has raised any allegation of impropriety, the failure to provide Petitioner with an interpreter or ensure that Petitioner made a valid waiver of his rights

---

[89] *Id.* at 415.
[90] *Id.* (emphasis in original).
[91] *See In re Murchison*, 349 U.S. at 138.

could indicate the trial judge neglected his duty.[92] The opportunity for cross-examination is particularly important when the recollection of the judge is the only vehicle used to settle a disputed factual issue that could implicate the credibility of the judge *and* determines whether a constitutional protection has been satisfied. In these circumstances, Petitioner should have been afforded the opportunity to question the validity of the trial judge's memory of events.

Based on the foregoing, the Court finds it "runs against the grain of fairness" for the same judge to enter his own unrebuttable recollection as evidence and weigh it against the testimony of witnesses when determining whether a constitutional right has been satisfied. Where, as here, a judge is basing a post-conviction factual finding of a *disputed* and *material* fact upon his own recollection, fairness dictates that an appellate court should not rely on such a factual finding.

If the Texas appellate courts had not considered the trial judge's recollection, there is little in the record to support the state courts' finding that Petitioner made a valid waiver. Although Petitioner stated Mancias told him he had a "right to have an interpreter,"[93] Petitioner's testimony does not indicate he knew what that right entailed. Mancias admitted he did not inform Petitioner of his rights and Mancias additionally conceded that he did not believe Petitioner knew he could get an interpreter by informing the trial judge he wanted one.[94] Nothing in the record contradicts this. There is no evidence Petitioner was informed of his rights by any other party. Thus, absent a colloquy in front of the judge, the state courts' finding a valid waiver is dubious.

---

[92] Federal and state protections required the court to *sua sponte* provide Petitioner with an interpreter after learning Petitioner could not speak or understand English. *See Garcia,* 149 S.W.3d at 145 ("when a trial judge is aware that the defendant has a problem understanding the English language . . . the judge has an independent duty to implement this right in the absence of a knowing and voluntary waiver by the defendant.").

[93] Dkt. No. 17-7 p. 16.

[94] *See id.* at pp. 10–13, 65.

### b. Record Does Not Support Finding Waiver

Even assuming, *arguendo*, that the trial judge's recollection was a proper basis for making a factual finding, a legal determination that Petitioner intentionally relinquished a known right is still constitutionally doubtful. The trial judge's recollection contains no evidence that the trial judge informed Petitioner of his rights.[95] Even if the trial judge had informed Petitioner of his rights at the bench conference, Petitioner spoke no English, and so, unless an interpreter was provided for Petitioner at the bench conference, Petitioner could not have knowingly waived his rights. There is no evidence that an interpreter was provided.[96] Accordingly, a finding that Petitioner provided a *knowing and intelligent* waiver of his rights raises constitutional issues because there is insufficient evidence to find Petitioner had been informed of his rights.

Additionally, the evidence does not support finding the waiver was voluntary. As the dissent in the Texas Court of Criminal Appeals order noted, Petitioner was provided a choice of "two constitutionally offensive  options:" agree to proceed without an interpreter or have "distracted" legal counsel.[97] In the context of waiving Miranda rights, the Supreme Court has explained "the relinquishment of the [constitutional] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."[98] "Only if the totality of the circumstances surrounding [the waiver] reveal both an uncoerced choice and the requisite level of comprehension  may a court properly conclude" that a right was waived.[99]

The Court finds the argument that Petitioner's choice was not voluntary to be persuasive. Petitioner was presented with the choice of having "distracted" counsel who could not

---

[95] *See id.* at pp. 29–30.
[96] *See id.*
[97] *See Garcia*, 429 S.W.3d at 613–614.
[98] *Moran v. Burbine*, 475 U.S. 412, 421 (1986).
[99] *Id.* (citations omitted).

"concentrate"[100] or having the proceedings translated for him. Essentially Petitioner had to choose between competent defense and being able to understand his own trial. What individual faced with a criminal proceeding in a language he does not understand, in a country that is not his own, would choose to defy the advice of his trial counsel and seek an interpreter if he had been told by his counsel that doing so would compromise his defense? This choice presented to Plaintiff was not much of a choice at all, hardly a choice free of duress. Thus, there is little in the record to determine that Petitioner made a *knowing* and *voluntary* waiver.

The final possibility is that Mancias waived an interpreter on Petitioner's behalf, and no waiver was directly required from Petitioner. The R&R proceeded on this understanding.[101] However, it is not clear, under the law, whether this was Mancias' choice to make. The Supreme Court has determined that some basic trial choices are so important that an attorney must seek the client's consent in order to waive the right.[102] Further, courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights."[103] The Supreme Court has not decided specifically what constitutional protections adhere to the waiver of the services of an interpreter and whether the services of an interpreter constitute a fundamental right.[104]

On this basis, it is unclear whether a bench conference with only Mancias and the trial judge would satisfy the constitutional requirements that may attach to waiving the services of an interpreter. The Court concludes that even if an attorney may waive the services of an interpreter on behalf of a client—a finding that is no means legally certain—that analysis does not extend to

---

[100] Dkt. No. 17-7 pp. 15–16.
[101] *Id.* at p. 6.
[102] *See, e.g., Florida v. Nixon*, 543 U.S. 175, 187 (2004) (identifying the choices to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal as examples).
[103] *Zerbst*, 304 U.S. at 467 (quotations omitted).
[104] The Court notes and highlights the analysis of the Magistrate Judge in the R&R finding that Supreme Court precedent provides no clear answer as to whether the right to an interpreter is a "fundamental right" that requires a personal waiver. *See* Dkt. No. 23 pp. 22–24.

the circumstances here. Namely, the record shows Mancias' did not inform Petitioner of his rights and did not ensure Petitioner was provided full knowledge of the proceedings.[105] Furthermore, as the Court has already demonstrated, the record does not support finding that Petitioner's waiver was voluntary. The Court concludes that an attorney may not waive a right on his client's behalf when the record demonstrates the attorney did not inform the client of the constitutional rights attached to the waiver *and* the attorney coerced his client into agreeing to the waiver. Accordingly, finding a valid waiver based on Mancias' discussion with the trial judge alone, when Petitioner had not been informed of his rights and had not provided a voluntary waiver, is an unreasonable application of Supreme Court legal holdings.

Based on the foregoing, the Court concludes that, giving all due deference, the state courts relied on an unreasonable determination of the facts in light of the evidence presented at the state court hearings.[106] Relying on the recollection of the trial judge calls into question issues of fundamental fairness that are at the heart of our adversary system. Without the recollection, there is no evidence upon which to find to that Petitioner freely and intelligently relinquished his right to an interpreter. Further, even assuming that the recollection of the trial judge should be considered, the Court determines the record contains insufficient evidence to find that Petitioner provided a voluntary and knowing waiver. Thus, the circumstances, taken as a whole, indicate that the evidence presented in the state court record does not support finding that Petitioner made a valid waiver.

---

[105] *See* Dkt. No. 17-7 p. 10–14.
[106] *See* 28 U.S.C. § 2254(d)(2).

However, despite the absence of a valid waiver, Petitioner's petition may still require a showing of prejudice before this Court can grant him relief.[107] Thus, the Court now turns to the question of whether Petitioner must demonstrate he was prejudiced by the constitutional error.

## B.     Impact of Invalid Waiver

The Magistrate Judge determined that "the record points to an invalid waiver,"[108] but that Petitioner's claims of ineffective assistance of counsel and violations of Petitioner's Due Process and Sixth Amendment rights both failed because Petitioner did not demonstrate he was prejudiced by the lack of an interpreter.[109] The Court adopts the Magistrate's Judge's findings of the constitutional errors and prejudice in full.[110]

The Court agrees that Petitioner has failed to demonstrate he was prejudiced by the constitutional error. However, upon independent review of the R&R, the Court concludes that the circumstances here raise sufficient constitutional questions that a certificate of appealability should issue. Specifically, the Court determines that reasonable jurists could debate whether the constitutional errors constituted "structural error"[111] such that Petitioner need not demonstrate he was prejudiced in order for his claims to succeed.

The Court will first consider the legal standard for evaluating structural errors in a habeas petition. The Court will then analyze structural error in the context of an ineffective assistance of counsel claim in particular, and then finally, consider whether Petitioner's claims could

---

[107] *Brecht,* 507 U.S. at 637
[108] Dkt. No. 23 p. 30.
[109] *Id.* p. 28, 40.
[110] *See id.* at pp. 24–25 (noting as to Petitioner's ineffective assistance of counsel claim that "defense counsel's failure to obtain an interpreter and failure to obtain his client's valid consent to waive an interpreter falls outside the range of reasonably competent professional assistance."), p. 40 (noting the "constitutional error" as to Petitioner's claim of violations of his Sixth Amendment and Due Process rights).
[111] *See Brecht*, 507 U.S. at 640.

demonstrate structural error and therefore he need not demonstrate prejudice. Because the state courts did not reach the issue of prejudice, the Court's review is *de novo*.[112]

  i.   *Legal Standard - Structural Error*

As previously noted, a federal court reviewing a state-court determination in a habeas corpus proceeding ordinarily should apply the "harmless error" standard, namely, "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"[113] However, the Supreme Court has recognized harmless-error analysis does not apply to "'structural defects in the constitution of the trial mechanism.'"[114]

Thus, when a federal court is reviewing a habeas petition on collateral review from a state court proceeding, certain errors, known as structural errors, may impact the trial itself and could require reversal even absent prejudice. The Court finds that Petitioner's claim raises issues that could be structural error.

The Supreme Court has determined that violations of Sixth Amendment and Due Process rights could cause structural error.[115] However, Petitioner's claim for ineffective assistance of counsel warrants particular consideration, because it is uncertain under current Supreme Court precedent whether a claim of ineffective assistance of counsel can raise an issue of structural error such that prejudice need not be demonstrated.

Thus, the Court will first address Petitioner's ineffective assistance of counsel claim and whether Petitioner may raise an issue of structural error in that context before laying out the standard for structural error more generally.

---

[112] *Cone*, 556 U.S. at 472.

[113] *Brecht,* 507 U.S. at 637 (citing *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).

[114] *Id.* at 638.

[115] *See, e.g., Faretta v. California*, 422 U.S. 806, 834 (1975) (finding that denying a criminal defendant the right to self-representation violated the Sixth Amendment and Due Process rights and constituted structural error).

### a.      Ineffective Assistance of Counsel and Structural Error

Petitioner's claim of ineffective assistance of counsel raises difficult constitutional questions regarding whether Petitioner must demonstrate prejudice in order to succeed. Petitioner's claim may give rise to a finding of structural error, as this Opinion will explain. However, it is not settled law whether a habeas petition may be granted for structural error raised in an ineffective assistance of counsel claim on collateral review.

Ineffective assistance of counsel claims are analyzed under the standard laid out in *Strickland v. Washington*.[116] In *Strickland,* the Court determined a petitioner must show that counsel's deficient performance prejudiced petitioner by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."[117] A violation of the right to effective representation is "not 'complete' until the defendant is prejudiced."[118] However, in *United States v. Cronic*, the Supreme Court held there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[119] The "complete denial of counsel" and failure of counsel "to subject the prosecution's case to meaningful adversarial testing" were "presumptively" unjustified.[120] Thus, ordinarily in an ineffective assistance of counsel claim, absent showing a complete denial of counsel, a petitioner may not succeed if he cannot demonstrate he was prejudiced by the error.

However, structural errors are those which affect the trial process itself,[121] and thus could possibly arise in the context of any claim. The exact interplay between the prejudice analysis required under *Strickland* and *Cronic,* and the doctrine of structural error is somewhat unclear.

---

[116] 466 U.S 668 (1984).
[117] *Id.* at 687.
[118] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006).
[119] 466 U.S. 648, 658 (1984).
[120] *Id.* at 658–659.
[121] *See Fulminante*, 499 U.S. at 310.

The Supreme Court considered the connections in a 2017 case, *Weaver v. Massachusetts.*[122] The Court granted certiorari to satisfy a disagreement among some Federal Courts of Appeals and state courts of last resort "whether a defendant must demonstrate prejudice in a case . . . in which a structural error is . . . [not] raised on direct review but is raised later via a claim alleging ineffective assistance of counsel."[123] The Court noted the doctrines "are intertwined; for the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim."[124]

The *Weaver* Court considered whether "under a proper interpretation of *Strickland*, even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair."[125] The Court "assumed that [this] interpretation of Strickland is the correct one," but ultimately decided the case on other grounds.[126] The Court analyzed the different types of structural errors and noted that the Court's holding did not "call into question the Court's precedents determining that certain errors are deemed structural," and noted that structural errors required "automatic reversal" when they were raised on direct appeal.[127] However, the Court specifically declined to address "whether the result should be any different if [structural errors] were raised instead in an ineffective-assistance claim on collateral review."[128] Finally, the Court

---

[122] 137 S. Ct. 1899, 1911 (2017).

[123] *Id.* at 1907.

[124] *Id.*

[125] *Id.*

[126] *Id.* The Court notes that the concurrence in *Weaver* calls this presumption into doubt. The concurrence states "[t]he prejudice prong of Strickland . . . does not ask whether an error was harmless but whether there was an error at all, for unless counsel's deficient performance prejudiced the defense, there was no Sixth Amendment violation in the first place. *Weaver v. Massachusetts*, 137 S. Ct. at 1916 (Alito J., concurring).

[127] *Weaver*, 137 S. Ct. at 1912.

[128] *Id.*

highlighted that for an ineffective assistance of counsel claim "the ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'"[129]

Although *Weaver* was decided after the state court decisions[130] at issue here and thus has no binding impact,[131] it is useful in determining whether to issue a certificate of appealability. The Court's pronouncement in *Weaver* indicates that it was an open constitutional question at the time that Petitioner's claims were considered whether, if Petitioner's claim indicated a structural error, the structural error could be raised on collateral review.

Further, in *McCoy v. Louisiana*, decided in 2018, the Supreme Court applied structural error analysis and observed that when a "client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence."[132] The Court in *McCoy* based its finding on holdings that existed at the time that Petitioner's claims were being considered by the state courts.[133] While neither *Weaver* nor *McCoy* apply retroactively, their analysis of existing precedent provides support that reasonable jurists could have concluded that Petitioner's claim for ineffective assistance of counsel did not need to demonstrate prejudice if there was a structural error.

The Court will now consider the standards involved in determining that a constitutional error should be deemed a structural error before analyzing whether Petitioner's claims may demonstrate structural error.

---

[129] *Id.* at 1911 (quoting *Strickland*, 466 U.S. at 696).
[130] Petitioner's last state court written order occurred in 2014. *See* Dkt. No. 23 pp. 2–3.
[131] *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (noting that a court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.").
[132] *McCoy v. Louisiana*, 138 S. Ct. 1500, 1510-11 (2018).
[133] *Id.* at 1511 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984), *United States v. Gonzalez-Lopez*, 548 U. S. at 150 (decided 2006), *Waller v. Georgia*, 467 U. S. 39, 49-50 (1984), *Fulminante*, 499 U. S. at 310 (decided 1991), *Faretta*, 422 U.S. at 834 (decided 1975), and *Sullivan v. Louisiana*, 508 U. S. 275, 279 (1993)).

### b.      *Structural Error*

A structural error is one that "affect[s] the framework within which the trial proceeds," as distinguished from a lapse or flaw that is "simply an error in the trial process itself."[134] Structural errors trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole.[135] Structural errors are those that are "intrinsically harmful" and "affect substantial rights."[136] The Court has found structural error in "a very limited class of cases."[137] These errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair."[138]

Among this limited class of structural errors are violations of the autonomy of criminal defendants, including the right to reject court appointed counsel,[139] the right to self-representation,[140] and the right to choice of counsel.[141] In the first of these cases, *Faretta v. California*, deciding that an individual has the right to reject appointed counsel, the Court focused on the individual choice of the defendant as the source of the structural error:

> The right to defend is personal. The defendant, and not his lawyer . . .will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'"[142]

The Supreme Court has concluded that the violation of these rights cannot be harmless, because the root of these rights relating to choosing counsel and conducting one's own defense are not

---

[134] *Fulminante*, 499 U. S. at 310.
[135] *United States v. Davila*, 569 U.S. 597, 611 (2013).
[136] *Neder v. United States*, 527 U.S. 1, 7 (1999).
[137] *Johnson v. United States*, 520 U.S. 461, 468 (1997).
[138] *Rose v. Clark*, 478 U.S. 570, 577-78 (1986).
[139] *See Faretta*, 422 U.S. at 834.
[140] *McKaskle*, 465 U.S. at 177 n.8.
[141] *Gonzalez-Lopez*, 548 U. S. at 150.
[142] *Faretta*, 422 U.S. at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-351 (Brennan, J., concurring)).

derived from the Sixth Amendment's purpose of ensuring a fair trial.[143] Instead "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."[144] Similarly, in the context of self-representation, the Court stated "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant. . . The right is either respected or denied; its deprivation cannot be harmless."[145] Finally, the Court found that denying choice of counsel "pervades the entire trial" and thus constituted structural error because determining the impact would require "a speculative inquiry into what might have occurred in an alternate universe."[146]

   ii. *Structural Error Analysis*

  The Court concludes that reasonable jurists could determine that the constitutional errors here are among the limited class of cases that constitute structural error. As the Court previously noted, the constitutional violations at issue in both Petitioner's claims are intermingled. The Court concludes that the trial strategy of Petitioner's counsel to deprive Petitioner of an interpreter without a valid waiver constitutes deficient performance. The failure of the trial court to either provide Petitioner an interpreter or ensure that Petitioner had entered a valid waiver on the record constituted a violation of Petitioner's Sixth Amendment and Due Process rights. These circumstances together served to deprive Petitioner of the right to make decisions about his own defense, a violation of Petitioner's autonomy right that the Court determines could constitute structural error. Therefore, the Court now considers them together.

---

[143] *Gonzalez-Lopez*, 548 U.S. at 148.
[144] *Id.*
[145] *McKaskle,* 465 U. S. at 177 n. 8.
[146] *Gonzalez-Lopez*, 548 U.S. at 150; *see also Sullivan* 508 U.S. at 279 (finding structural error in the context of the failure to provide a reasonable doubt instruction to the jury because the effects of the error are "necessarily unquantifiable and indeterminate.").

Here, Petitioner's defense counsel, Mancias, advised Petitioner to forego an interpreter because "it would be very distracting for the jury."[147] Furthermore, Mancias not only advised Petitioner to waive an interpreter, and thus limited Petitioner's ability to comprehend the trial, but *deliberately* prevented Petitioner from full and independent knowledge of the proceedings. Mancias conceded that he only provided summaries of evidence that did not "harm" Petitioner's case.[148] Indeed, Hinojosa testified that Mancias admitted to her that "[Mancias] did not really want [Petitioner] to know what's going on."[149] This error was compounded by the trial judge who did not ensure that Petitioner had made a valid waiver of the services of an interpreter or otherwise take steps to ensure Petitioner could understand the trial.

The essence of the error here is not that Petitioner's substantive rights were violated, although the Court concludes that they were. Petitioner sat, uncomprehending, through his own criminal proceedings, basically absent from his own trial. Petitioner could not meaningfully confront the evidence presented against him or assist in his own defense. Each of these is a long-protected basic right of our legal system.[150] Each has been curtailed here.[151] However, the fundamental error is that Petitioner was denied the ability to make any independent and autonomous choice about his defense. By disregarding Petitioner's right to an interpreter without

---

[147] Dkt. No. 17-7 pp. 6–7.

[148] *See id.* at pp. 7–9.

[149] *Id.* at p.18.

[150] U.S. CONST. AMEND. VI; *See, e.g., Lewis v. United States,* 146 U.S. 370, 372 (1892) (considerations of fairness in our adversary system prevent a state from prosecuting a defendant who is not present at his own trial); *Dusky v. United States*, 362 U.S. 402 (1960) (a defendant's constitutional right to be present at his trial requires "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."); *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (right to confront witnesses).

[151] Numerous courts have found violations of these rights due to the failure to provide an interpreter through all or part of a criminal proceeding. Indeed, appellate courts are unanimous in determining that failure to provide an interpreter violates Sixth Amendment and Due Process Rights. *See, e.g., United States ex rel. Negron v. State,* 434 F.2d 386, 389-90 (2d Cir. 1970); *United States v. Carrion*, 488 F.2d 12, 14 (1st Cir. 1973), cert. denied, 416 U.S. 907 (1974); *United States v. Martinez*, 616 F.2d 185, 188 (5th Cir. 1980)(per curiam), cert. denied, 450 U.S. 994 (1981);*United States v. Lim*, 794 F.2d 469 (9th Cir. 1986); *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001).

obtaining a valid and knowing waiver and then failing to ensure Petitioner was given full knowledge of the proceedings, Mancias vitiated any *potential* that Petitioner could object to any defense strategy or objective, because Petitioner *did not know* what these were.

The record shows Mancias may have been well-intentioned, and indeed, Petitioner may not have been prejudiced. However, the violation here is to Petitioner's autonomous right to make his own decisions about his defense, and cannot, by its nature, be harmless. To deliberately prevent a client from understanding criminal proceedings strikes at the heart of "that respect for the individual which is the lifeblood of the law."[152] The Supreme Court has held that the right to defend is personal to the defendant and that the defendant has the right to "conduct his own defense" even if this is "ultimately to his own detriment."[153] This right is derived not from protections designed to prevent erroneous imprisonment, but rather from the fundamental principle of autonomous choice itself.[154] The Supreme Court has also repeatedly held that violations of this right and its derivatives have constituted structural error.[155] Likewise, the violation here is "complete" once the choice has been violated, and its deprivation cannot be harmless.[156]

Additionally, the harms are such that they could only be measured in "an alternate universe."[157] Petitioner sat before the jury as numerous witnesses testified against him in

---

[152] *Illinois*, 397 U.S. at 350-351 (Brennan, J., concurring).

[153] *Faretta,* 422 U.S. at 834.

[154] *See id; see also Weaver*, 137 S. Ct. at 1908; *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 160 (2000) ("The *Faretta* majority found that the right to self-representation at trial was grounded in part in a respect for individual autonomy."); *McKaskle*, 465 U.S. at 177.

[155] *McKaskle*, 465 U.S. at 177 (right to self-representation); *Faretta*, 422 U.S. at 834 (noting the writers of the Bill of Rights likely understood the "inestimable worth of free choice"); *Gonzalez-Lopez*, 548 U. S. at 149 (right to choose counsel). The Court additionally notes that the Supreme Court has recently determined that violation of the right of a criminal defendant to make decisions about defense objectives is structural error. *See McCoy*, 138 S. Ct. at 1505 ("With individual liberty . . . at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense.").

[156] *McKaskle*, 465 U.S. at 177; (right to self-representation "is either respected or denied; its deprivation cannot be harmless."); *Gonzalez-Lopez*, 548 U.S. at 148.

[157] *See Gonzalez-Lopez*, 548 U.S. at 150.

English. Clearly, he could not have responded to this evidence with comprehension. It is a fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial, and "the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial."[158] The jury surely observed Petitioner throughout the English testimony. It is impossible to know how his lack of reaction impacted them, but it does not strain credulity to imagine that a jury could have a negative reaction to an accused murderer who appeared completely uninterested in the testimony against him. The Supreme Court has previously found errors that pervade the entire trial and could impact the decisions of juries to be "necessarily unquantifiable and indeterminate" and thus structural error.[159]

In addition, the Court determines it is a reasonable contention that the overall circumstances undermined "basic protections" in the trial process without which a trial cannot be "fundamentally fair."[160] In short, Petitioner was effectively coerced into abandoning some of his most fundamental rights by his own counsel, and then only provided limited summaries of the proceedings. Neither defense counsel nor the trial judge took steps to ensure that Petitioner was aware that he had the right to understand these proceedings. It is difficult to conceive that a trial conducted under such circumstances is "fundamentally fair." Thus, this error implicates basic considerations of fairness and reasonable jurists could determine it a structural error.

Although the Court holds that Petitioner is not entitled to habeas relief, the question is both difficult and close. Based on the foregoing, the Court concludes reasonable jurists could

---

[158] *Riggins v. Nevada*, 504 U.S. 127, 142 (1992).
[159] *Sullivan*, 508 U.S. at 282 (the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction is structural error); *see also Vasquez*, 474 U.S. at 263 (no harmless-error review when a jury is selected based on improper criteria or has been exposed to prejudicial publicity).
[160] *Rose v. Clark*, 478 U.S. 570, 577-78 (1986).

determine the error here is structural error and reversal required. Therefore, the Court determines a certificate of appealability should issue. Specifically, the Court grants the certificate so that the Court of Appeals may address the following: Does the denial of the fundamental right to be present and to participate in a defendant's own trial by the failure to provide an interpreter require a showing of prejudice before a defendant may be granted habeas relief?

### C.    Appoint Attorney

In addition, the Court determines that this is such a case in which it is appropriate for the Court to utilize its discretion to appoint counsel.[161] **Joseph A. Connors, III** is hereby **APPOINTED** to represent Petitioner on appeal. The Court instructs the Clerk of the Court to mail a copy of this Opinion to Mr. Connors at P.O. Box 5838, McAllen, Texas 78502-5838.

### IV.    CONCLUSION

Accordingly, this Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's R&R[162] as discussed herein, **DISMISSES WITH PREJUDICE** Petitioner's petition,[163] but **GRANTS** a certificate of appealability regarding his ineffective assistance and Sixth Amendment and Due Process claims, and **DENIES** a certificate of appealability as to his Miranda claim. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of November, 2018.

_____

Micaela Alvarez
United States District Judge

---

[161] *Naranjo v. Thompson,* 809 F.3d 793, 802 (5th Cir. 2015) (Federal courts' inherent powers undoubtedly encompass the appointment of counsel).
[162] Dkt. No. 23.
[163] Dkt. No. 1.